385 A.2d 416

**COMMONWEALTH of Pennsylvania**

v.

**Richard FORSTER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 14, 1976.

Decided April 13, 1978.

Spaeth, J., filed a dissenting opinion in which Hoffman, J., joined.

Patrick J. Flannery, Assistant Public Defender, Wilkes-Barre, for appellant.

Thomas J. Glenn, Jr., Assistant District Attorney, Wilkes-Barre, and Patrick J. Toole, Jr., District Attorney, Wilkes-Barre, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This is an appeal from a conviction of possession of a controlled substance.[1] Appellant's sole claim is that the facts alleged in the warrant affidavit were insufficient to constitute probable cause for the issuance of a search warrant. We agree with the issuing magistrate and the lower court that probable cause was shown, and we therefore affirm the judgment of sentence.

On April 17, 1975, pursuant to a warrant, local police entered and searched appellant's room in a college dormitory. The search garnered 69.0 grams of marijuana, and on the basis of this evidence appellant was convicted and sentenced to a two year term of probation.[2]

The affidavit of probable cause in the application for the warrant stated as follows:

"On 4/17/75 the above affiant received certain information from a confidential informant which is the basis of the probable cause for the issuance of this search warrant, a search warrant for the person and premises of Richard Forster located at 133 N. Franklin st, Wilkes-Barre, Pa room 720, Holy Cross Hall. On April 15, 1975 on the Kings College Campus the informant observed Richard Forster hand to a W/F age approx 19, approx 5'5", long

1. Act of April 14, 1972, P.L. 233, No. 64, § 13(a)(16) (35 P.S. § 780–113(a)(16) (Supp. 1976–77)).

2. The term was reduced to one year by order dated December 30, 1975.

blond hair, heavy set, a tin foil packet in exchange for $15.00. During the transaction the informant overheard Richard say that it was good T.H.C. and that he still had an ounce left. The informant approached the girl when Richard left and stated that the informant was interested in buying some T.H.C. however could not remember the name of the fellow she had just bought from, and she stated 'Oh that was Richard Forster and that he was at room 720.' The informant later pointed Richard out to the affiant. I verily believe that the informant is very reliable and the information received is true and correct, because information received in the past from this informant has led to the arrest and subsequent convictions of certain individuals on 6/5/74 R.B., 6/11/74 J.M., 9/18/74 J.K., and 10/15/74 J.L.J. Sworn to (or affirmed) and subscribed to before me this date 4/17/75—"

■ The requisites for establishing probable cause for issuing a search warrant in a situation where the affiant's information has been provided by an informant are found in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). First, the affidavit must include the underlying circumstances supporting the informant's conclusion that the contraband to be seized will be found at the place to be searched. Second, the affidavit must present the circumstances justifying the affiant's belief in the reliability of the informant.

In the instant case, appellant does not challenge the sufficiency of the affidavit to establish the informant's trustworthiness. It is, however, specifically asserted that the facts therein did not provide probable cause to believe that drugs would be found in appellant's dormitory room.

In its analysis, the dissent finds this case to be controlled by the result in *Commonwealth v. Kline,* 234 Pa.Super. 12, 335 A.2d 361 (1975).[3] Reading *Kline,* however, we find that it does not dictate suppression of the evidence herein. The dissent points out that:

**3.** This writer dissented in *Kline.*

"[T]here was no reference by appellant, however indirect, to his dormitory room. It was the purchaser who told the informant the number of appellant's room, and that was only in response to the informant's query regarding appellant's identity." (Dissenting Opn. at 441).

The informant overheard appellant state that he still had an ounce of T.H.C. left and, upon inquiry, was informed by the buyer of appellant's identity and that "he was at room 720." These circumstances gave the police grounds for a reasonable belief that a search of appellant's room would yield contraband. "[T]he United States Supreme Court in *United States v. Ventresca,* [380 U.S. 102 (1965)], at 108–09, 85 S.Ct. 741, at 746, 13 L.Ed.2d 684, stated that the affidavit 'must be tested and interpreted by . . . [this Court] in a commonsense and realistic fashion,' and that we 'should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner,' and that 'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'" *Commonwealth v. Matthews,* 446 Pa. 65, 71, 285 A.2d 510, 513 (1971).

It was known that appellant had engaged in the sale of a controlled substance and that he possessed an additional quantity of that substance for sale. Appellant's illegal activities were carried out on a college campus and his residence thereon was a dormitory room. The informant's inquiry in regard to a possible purchase of T.H.C., addressed to appellant's female customer, produced a reply directing him to appellant's room. The dissent interprets this statement as solely indicating where appellant could be found, but it could as easily be read to indicate a location where a sale might be immediately consummated, and hence, inferentially, the place where appellant's cache was to be found. Although the dissent speculates that the contraband " . . . might just as easily [have been] in his automobile, or gym locker, or somewhere else on campus" (Dissenting Opn. at 441), the law does not require that the information in a warrant affidavit establish with absolute certainty

that the object of the search will be found at the stated location, nor does it demand that the affidavit information preclude all possibility that the sought after article is not secreted in another location.

"We must further be mindful 'that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois,* 386 U.S. 300, 311, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); and that their determination of probable cause should be paid great deference by reviewing courts. *Jones v. United States,* 362 U.S. 257, 270–271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).' *Spinelli,* supra, 393 U.S. 410, at 419, 89 S.Ct. 584, at 590, 21 L.Ed.2d 637, at 645." *Commonwealth v. Frye,* 242 Pa.Super. 144, 148, 363 A.2d 1201, 1203 (1976).

We find that the warrant in the instant case was based on an affidavit which provided a reasonable basis to believe that drugs would be found in appellant's dormitory room. The judgment of sentence of the lower court is affirmed.

SPAETH, J., files a dissenting opinion in which HOFFMAN, J., joins.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

On April 17, 1975, local police, armed with a warrant, entered and searched appellant's dormitory room in Holy Cross Hall, King's College, Wilkes-Barre. They found 69.9 grams of marihuana, and on the basis of this evidence,

appellant was convicted of possession of a controlled substance[1] and sentenced to a two year term of probation.[2]

The police officer's affidavit of probable cause in the application for the warrant stated:

On 4/17/75 the above affiant received certain information from a confidential informant which is the basis of the probable cause for the issuance of this search warrant, a search warrant for the person and premises of Richard Forster located at 133 N. Franklin St., Wilkes-Barre, Pa. room 720, Holy Cross Hall. On April 15, 1975 on the Kings College Campus the informant observed Richard Forster hand to a W/F age approx 19, approx 5'5", long blond hair, heavy set, a tin foil packet in exchange for $15.00. During the transaction the informant overheard Richard say that it was good T.H.C.[3] and that he still had an ounce left. The informant approached the girl when Richard left and stated that the informant was interested in buying some T.H.C. however could not remember the name of the fellow she had just bought from, and she stated "Oh that was Richard Forster and that he was at room 720." The informant later pointed Richard out to the affiant. I verily believe that the informant is very reliable and the information received is true and correct, because information received in the past from this informant has led to the arrest and subsequent convictions of certain individuals on 6/5/74 R.B., 6/11/74 J.M., 9/18/74 J.K., and 10/15/74 J.L.J. Sworn to (or affirmed) and subscribed to before me this date 4/17/75—

Appellant contends that this statement is insufficient to show probable cause, and that his pre-trial motion to suppress should therefore have been granted. *Spinelli v. Unit-*

---

1. Act of April 14, 1972, P.L. 233, No. 64, § 1 *et seq.; as amended,* 35 P.S. § 780–113 (1977 Supp.).

2. By order of Dec. 30, 1975, the term was reduced to one year.

3. "T.H.C." is a reference to tetrahydrocannabinol, the intoxicating agent in marihuana.

*ed States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 631 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Specifically, he contends that the facts set forth in the officer's affidavit were insufficient to support an independent judgment by the issuing authority that appellant probably had contraband in his dormitory room. *Cf. Commonwealth v. Scavincky,* 240 Pa.Super. 550, 359 A.2d 449 (1976).

Appellant's contention must be decided by reference to two cases recently decided by this court: *Commonwealth v. Kline,* 234 Pa.Super. 12, 335 A.2d 361 (1975), and *Commonwealth v. Frye,* 242 Pa.Super. 144, 363 A.2d 1201 (1976).

In *Kline* the issue, as here, was whether there was probable cause to believe there were drugs at the place to be searched. The police in *Kline* had received information from three informants. Two of the informants were young girls who had purchased drugs from one Morgan Arthur; they said that Arthur had gone to his apartment and returned with drugs.[4] The third informant was a confidential informant who said that he had seen Arthur and an associate selling drugs during a two week period; he confirmed the address given the police by the two girls as Arthur's residence. We held the recitation in the affidavit insufficient to show probable cause to believe that drugs were being kept at the apartment. While the informants' statements did show that Arthur was a drug dealer, there was no factual support for the girls' conclusion that Arthur had gone to his apartment to pick up drugs. The confidential informant's statement also failed to tie Arthur's apartment in with his drug business. Since "[p]robable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home," 234 Pa.Super. at 17, 335 A.2d at 364, the issuing authority erred in issuing the warrant; we therefore affirmed the suppression order of the lower court.

4. The premises searched in *Kline* were Arthur's apartment; Kline was there when the warrant was served.

In *Frye* we faced the issue once again. There a confidential informant told the police that he had seen Frye sell to a third party a kilo brick of marihuana, and that Frye had said to the third party that if he wanted more "to call him after 10:30 p. m., 2–22–85 and no later than 1:30 a. m. 2–23–75 because this would be the best hours to catch him at home because he would be out taking care of business." In approving the warrant, the majority in *Frye* acknowledged *Kline,* but distinguished it, stating that "the nexus between the evidence to be seized and the place to be searched was provided by Frye's admission that he was conducting at least part of his unlawful operations from his home." 242 Pa.Super. at 149, 363 A.2d at 1204.

While the question is close, the present case is more like *Kline* than *Frye.* Here, unlike in *Frye,* there was no reference by appellant, however indirect, to his dormitory room. It was the purchaser who told the informant the number of appellant's room, and that was only in response to the informant's query regarding appellant's identity. In this respect, indeed, the affidavit is even weaker than the affidavit in *Kline,* for there the police had been told by the purchasers, not simply the dealer's home address, but that the dealer had gone to his home to pick up the drugs.

Granted, the facts set forth in the affidavit made out probable cause to believe that appellant had sold marihuana, and had more marihuana for sale. But on the crucial question—where was the marihuana?—there was nothing. It might be in appellant's room; it might just as easily be in his automobile, or gym locker, or somewhere else on campus.

The judgment of sentence should be reversed, and the case remanded for a new trial.

HOFFMAN, J., joins in this opinion.