595 A.2d 1216

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**James Kevin DAVIS, Appellee.**

Superior Court of Pennsylvania.

Argued April 24, 1991.

Filed Aug. 2, 1991.

Joseph J. Mittleman, Asst. Dist. Atty., Media, for Com.

Thomas P. Lomax, West Chester, for appellee.

Before KELLY, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

■ The Commonwealth appeals the order of the Court of Common Pleas of Delaware County granting the motion to suppress of the defendant/appellee, James Kevin Davis.[1] We reverse.

In reviewing the grant of a motion to suppress, "we, as an appellate court, must consider only the evidence of the defendant's witnesses, and only so much of the evidence presented by the prosecution as remains uncontradicted by the record as a whole. When the evidence supports the factual findings of the suppression court, we may reverse only if there is an error of law." *Commonwealth v. Jenkins*, 401 Pa.Super. 580, 585 A.2d 1078, 1079 (1991) (Citations omitted).

With the defendant's failure to present any witnesses on his behalf, the evidence submitted by the Commonwealth remains uncontradicted and reveals that on June 8, 1990, Sergeant John Finnegan, of the City of Chester Police Department, filed an application for a search warrant with an affidavit attached. The application provided that the place and person to be searched were 408 Pancoast Place, a

---

**1.** The Commonwealth avers in its appellate brief that the entry of the order appealed will substantially handicap or effectively terminate its prosecution of the defendant. This claim is sufficient to allow review of the order in question. *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985).

dwelling in the William Penn Project, and John Davis, Kevin Davis, a/k/a "Kevie–Kaz", respectively. The items sought to be seized consisted of drugs, drug paraphernalia, U.S. currency and proof of residency. In the remaining portion of the warrant, the affiant set forth the profile of the confidential informant as to reliability and veracity. Lastly, in the affidavit section appeared the following:

Within the past 48 hrs. of the preparation of this search warrant the affiant listed on the face sheet of this warrant did [*sic*] speak with the confidential reliable informant also listed on the face sheet of the warrant. This informant did advise the affiant of a subject by the name of Kevin Davis a black male approx. 19 yrs. of age, who also has the street name of "Kevie Kaz". The informant stated that the subject is ligt [*sic*] skinned and lives at 408 Pancoast Pl. in the William Penn Project. The informant also stated that the subject has been selling cocaine for quite a while and is still selling cociane [*sic*] in the area of the Wm. Penn Project. The informant stated that he/she has observed him (Kevin Davis) on several occasions in the past selling cociane [*sic*] and has observed him entering the residence of 408 Pancoast Pl. after he had made some sales or was going in for the night.

Within the past 48 hrs. the informant stated that he/she was present in the area of the Wm. Penn Project and did observe the subject Kevin Davis make approx. 3 sales to individuals, who either approached the subject (Davis) or he approached them. The informant advised the affiant that he/she observed the exchange between (Davis) and the customer. The informant also within the past 48 hrs. also observed the subject going to and coming from 408 Pancoast Pl. The informant also stated that the subject was suppose to have gotten a couple of ounces of cociane [*sic*] in just recently.

Sgt. Finnegan did check with Off. Sendek to see if he had ever heard of Kevin Davis aka (Kevie Kaz) and he advised the affiant that he was aware of the subject and knew him by the name of (Kevie–Kaz)[.] [T]he officer

stated that informants advised him of the subject and that he was suppose to be dealing in cocaine.

A check was made with the Chester Housing Auth. listings and the residence of 408 Pancoast Pl. Chester Pa. is listed in the anme [*sic*] of John Davis.

Based on the information listed above, which the affiant believes to be true and correct, the affiant request [*sic*] the issuance of this search warrant.

The search warrant and affidavit were signed and sealed by the affiant and district justice on the date application for each was made. Once obtained, the search warrant was executed on June 9, 1990, at 7:54 a.m. by eight City of Chester police officers.

In particular, Officers Kaisner and MacIntire approached the front door of the residence. Officer MacIntire knocked several times on the door. When he received no response, and with the passage of a few seconds, Officer Kaisner peered through the window situated to the right of the door. It faced the living room and people were *observed* therein. However, no one answered the knock. Ten to fifteen seconds later, Officer MacIntire knocked again and "tried the doorknob ... and the [front] door came open...." "As the door came open, [Officer MacIntire] announced [him]self as a police officer, and then entered...." In other words, he "was stepping into the open door as [he] was doing that." He stated he had a search warrant for the residence and one Kevin Davis.

Officer MacIntire proceeded to the second floor and found the defendant sleeping. The defendant was awakened and informed of the police's presence to conduct a warranted search of the premises. Once this was completed, the police had confiscated money ($2,709), drugs (marijuana), drug paraphernalia, and a photo-I.D. of James Davis and other various sundry items of which a receipt/inventory sheet was prepared, signed by Officer Finnegan and witnessed by Officers Sendek and Kaisner. A copy of the inventory was provided to the defendant. Thereafter, a

complaint was issued charging the defendant with violations of the Controlled Substance, Drug, Device and Cosmetic Act. The defendant was arraigned, bail was posted and a preliminary hearing followed in which the defendant was held for court on three counts of violating the Drug Act. An information was filed by the attorney for the Commonwealth charging the defendant with possession of a controlled substance, possession with intent to deliver the same and possession of drug paraphernalia.

In the defendant's pre-trial motion to suppress, he challenged the warrant as lacking sufficient probable cause to "conclude in whole or in part that criminal activity was taking place inside the premises 408 Pancoast Place...." and the "manner in which the Search Warrant was executed, and the resulting searches conducted were illegal and in violation of the defendant's First, Fourth, Fifth and Sixteenth Amendment Rights."

A suppression hearing took place, testimony was presented by the Commonwealth and argument was heard from both sides resulting in the grant of the defendant's suppression motion. In an opinion that followed, the suppression court held that "the affidavit did not contain sufficient facts to believe that drugs would be found in defendant's residence", nor was the police's execution of the warrant lawful: (a) delay of ten seconds was not a reasonable time for police officers to wait before effecting a forcible entry into private premises for conducting a search, *Commonwealth v. Mazzella*, 231 Pa.Super. 247, 331 A.2d 784 (1974); and (b) failure of police to give notice of their identity and purpose *before* attempting to enter private premises violated defendant's Fourth Amendment right to privacy, *Commonwealth v. Clemson*, 234 Pa.Super. 191, 338 A.2d 649 (1975).

A timely appeal was perfected by the Commonwealth challenging the court's suppression ruling on grounds that the search warrant obtained by the City of Chester police, as well as its execution, fully comported with the mandates of federal and state law. Specifically, at first, the Commonwealth argues that the affidavit portion of the search

warrant established probable cause that the evidence sought would be found in the defendant's residence.

As stated most recently by a panel of this Court:

> ... this jurisdiction's test of probable cause [i]s one [of] summoning the magistrate to approach the warrant application in a common sense, non-technical, ungrudging and positive manner. To this end, our Supreme Court has more recently adopted the "totality of circumstances" approach for assessing probable cause. See *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985). As a result, the Pennsylvania constitutional standard essentially reflects the federal standard announced in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Important, however, is to recognize that *Gates* and *Gray* did no more than loosen the analytical straightjacket evolving through an overly mechanistic application of the two-prong *Aguilar–Spinelli test*. *The dual "basis of knowledge" and "veracity" prongs of* Aguilar–Spinelli are still very much a part of probable cause analysis. What has changed is the manner through which the magistrate evaluates the affidavit of probable cause in reference to the old two-prong test:
>
>> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, that there is a fair probability that contraband of evidence of a crime *will be found in a particular place.*
>
> *Gray*, 509 Pa. at 484, 503 A.2d at 925 (emphasis added) (quoting *Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332).

*Commonwealth v. Flaherty*, 400 Pa.Super. 397, 583 A.2d 1175, 1177 (1990) (Citations omitted in part). Added to the preceding standard is the "duty of a reviewing court ... to ensure that the magistrate had a 'substantial basis for ... conclud[ing] that probable cause existed.' " *Commonwealth v. Melilli*, 521 Pa. 405, 418–19, 555 A.2d 1254, 1261

(1989). Accord *Commonwealth v. Karns,* 389 Pa.Super. 58, 566 A.2d 615, 616 (1989).

When we examine the information contained in the four corners of the affidavit, see *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991), we see that we have a close case, very similar to several others we have had to decide.

For example, in *Commonwealth v. Kline,* 234 Pa.Super. 12, 335 A.2d 361 (1975), the affidavit contained information that: two females had asked the defendant, whom they knew to be selling drugs, for some LSD; they told the affiant that the defendant went to his apartment and returned a few minutes later with LSD; an informant also told the affiant that the defendant was selling drugs which he had purchased some one week before the date of the warrant; and the informant confirmed the defendant's living quarters.

The lower court suppressed the evidence seized. Although there was sufficient information to establish that the defendant was dealing in drugs and living in the premises described, the affidavit was ruled by the lower court to have lacked sufficient evidence to establish the basis on which the several informants had concluded that the defendant had gone to his apartment to get drugs.

On appeal, this Court affirmed the suppression of the evidence on the grounds that there was:

> ... no indication of where the transaction took place, how long it took, how long [the defendant] was gone, or what led the girls to conclude that he had gone to his apartment.

*   *   *   *   *   *

> Probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home. [The suppression court judge] stated the matter well in his memorandum opinion: "In our opinion an allegation based on an assumption or supposition not supported by the facts is

insufficient to support [an inference of] criminal activity in a premises, in spite of the fact that there are plenty of allegations to relate criminal activity of the individual who is alleged to have lived in the premises."

234 Pa.Super. at 17–18, 335 A.2d at 364.

In *Commonwealth v. Frye*, 242 Pa.Super. 144, 149, 363 A.2d 1201, 1204 (1976), however, we found probable cause to exist because: "the nexus between the evidence seized and the place to be searched was provided by Frye's admission that he was conducting at least a part of his unlawful operations from his home." Similarly, in *Commonwealth v. Forster*, 253 Pa.Super. 433, 385 A.2d 416 (1978), the informant overheard the seller say to the buyer that he still had some drugs left; when the informant asked the buyer the identity of the seller, the buyer said the seller "was at room 720." The seller was a college student, and room 720 was a dormitory. In these circumstances, a majority of this Court interpreted the informant's statement to mean not only where the seller could be found but where a sale could be immediately consummated. On this interpretation, probable cause to search room 720 was shown.

The Court in *Commonwealth v. Yucknevage*, 257 Pa.Super. 19, 390 A.2d 225 (1978), sitting en banc, concluded that the defendant's statement to an undercover agent that he was 5 pounds short of the 13 pounds of hashish desired to be purchased would be remedied in that the defendant "would be getting more hashish from the city that night[, and i]t was there[after] agreed that they would meet again at 8:00 p.m. that night, when [the undercover agent] would buy the hashish." *Id.*, 257 Pa.Superior Ct. at 23–24, 390 A.2d at 227. The initial meeting occurred at 4:30 p.m. of the same day.

In concluding that the warrant was sufficient on its face to justify the search of the defendant's home, the *Yucknevage* Court wrote:

... [the defendant's] statement ... that he was 5 pounds short of the 13 pounds of hashish [the undercover agent] wanted, support[ed] the inference that the hashish on [the defendant's] person had come from a supply in the

house[, out of which the undercover agent had observed the defendant exit to arrive at the 4:30 p.m. meeting previously arranged for the purchase of a large quantity of hashish] . . . [T]he fact that the place of the 8:00 p.m. meeting was not discussed is not dispositive. If two persons meet outside a certain house at 4:30 p.m., and agree to meet again at 8:00, the very fact that they do not say where they will meet again may suggest that it will be at the same place.

At the 4:30 meeting [the defendant] said he was getting more hashish from the city that night. Given the inference—just discussed—that when he said this, he already had some hashish in the house, the likelihood was that when he got more hashish from the city he would add it to the supply in the house, and then take from this enlarged supply the 13 pounds to sell [the undercover agent] at the 8:00 p.m. meeting, outside, if not inside, the house.

*Id.,* 257 Pa.Superior Ct. at 25–26, 390 A.2d at 228 (Footnote omitted). Lastly, we have this Court's decision in *Commonwealth v. Way,* 342 Pa.Super. 341, 492 A.2d 1151 (1985), which vacated the judgment of sentence and reversed the order denying the defendant's motion to withdraw his guilty pleas for trial counsel's failure to suppress physical evidence obtained in an allegedly illegal search.

The facts fairly summarized are that the informant arranged a drug transaction by phone. The alleged transaction occurred in a blue van along a country road. After the alleged transaction, police followed the blue van to a driveway of a property at the corner of Douglas Dr. and Glendale Rd. The informant identified appellant as the driver of the blue van. A police source told the affiant that appellant lived at the intersection of Douglas Dr. and Glendale Rd. The affidavit did not contain sufficient facts to believe that drugs would be found on the premises to be searched. Probable cause to believe that a

man has committed a crime does not necessarily give rise to probable cause to search his home.

*Id.,* 342 Pa.Superior Ct. at 347, 492 A.2d at 1154.

Instantly, the presence of probable cause is not so clear as in *Frye,* for considering the statement in the application, Davis did not say either that he was making drug sales from his house, or that his "recently" received cocaine was stored in his home. However, the showing of probable cause is clearer than in *Way* and *Kline,* and at least as clear as in *Yucknevage* and *Forster.*

*First,* Davis was seen leaving and returning to the house, a fact supporting the inference that he lived there. *Second,* within 48 hours of the issuance of the warrant, the confidential informant witnessed Davis transact the sale of cocaine on three occasions. This fact was direct evidence that Davis was trafficking in cocaine. *Third,* reading the affidavit in a common sense fashion, devoid of hypertechnicality and not in an isolated fashion as to the allegations contained therein, the confidential informant had "observed ... Davis ... on several occasions in the past selling coc[ai]ne and ... entering the residence of 408 Pancoast Pl. *after he had made some sales...."* In fact, within the 48-hour period preceding the issuance of the search warrant, the confidential informant witnessed Davis make three drug sales in the William Penn Project, and, within the same time span, Davis was "observed ... going to and coming from 408 Pancoast Pl."

*Fourth,* and lastly, the confidential informant was told by Davis that he had "just recently" obtained "a couple of ounces of cocaine". This also occurred within 48 hours prior to obtaining the warrant to search the defendant's home.

Under the "totality of circumstances" test, and because of the illegality, value and recent delivery of cocaine, there was a "fair probability" that the cocaine had to be "secreted in a 'safe' location; a man of reasonable caution would [have] be[en] warrant[ed] in believing that [cocaine] was

being kept at [Davis'] residence." *Frye*, supra, 242 Pa.Super. at 149, 363 A.2d at 1204 (Citations omitted).

While it is obvious that there were other places where the cocaine *might* have been secreted, it is also true that:

> ... the law does not require that the information in a warrant affidavit establish with absolute certainty that the object of the search will be found at the stated location, nor does it demand that the affidavit information preclude all possibility that the sought after article is not secreted in another location.

*Forster*, supra, 253 Pa.Super. at 437–38, 385 A.2d at 418; *Frye*, supra, 242 Pa.Super. at 148, 363 A.2d at 1204; cf. *Commonwealth v. Gannon*, 308 Pa.Super. 330, 454 A.2d 561 (1982).

Accordingly, we hold that the affidavit was sufficient on its face to establish probable cause to believe that the objects sought to be searched would be found in Davis' home. However, our task is not at an end because we next must decide whether the suppression court's determination that the police violated Pa.R.Crim.P. 2007's "knock and announce" rule is substantiated by the facts and law.

Rule 2007 provides:

(a) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of his identity, authority and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require his immediate forcibly entry.

(b) Such officer shall await a response for a reasonable period of time after his announcement of identity, authority and purpose, unless exigent circumstances require his immediate forcible entry.

(c) If the officer is not admitted after such reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

It was the obligation of the Commonwealth, at the suppression hearing, to prove, by a preponderance of the evidence, that the search or seizure of the evidence satisfied the mandates of Rule 2007. See *Commonwealth v. Parsons*, 391 Pa.Super. 273, 570 A.2d 1328, 1331–32 (1990), wherein this Court articulated the underlying objectives of Rule 2007; to-wit:

"The purpose[s] of the 'knock and announce' rule," ..., "[are] to prevent violence and physical injury to the police and occupants, to protect an occupant's privacy expectation against unauthorized entry of persons unknown to him or her, and to prevent property damage resulting from forced entry." It has also been stated that even where the police announce both their identity and purpose ... forcible entry remains impermissible if the occupants of the premises sought to be entered have not been provided with the opportunity to relinquish the premises voluntarily. The critical inquiry then, is whether sufficient time elapsed for the police to form a reasonable belief that the occupants of the premises did not intend to surrender the premises peaceably or voluntarily. [Citations omitted]

In compliance with the preceding, our examination of the record indicates that Officer John Kaisner, who accompanied his partner in obtaining entry into the premises, testified on the subject at hand as follows:

Myself and Officer MacIntire went to the front door of this residence. Officer MacIntire knocked at the door. A few seconds went by and [Officer Kaisner] peered in the window to the right of the door which faced into the living room. Nobody responded for [*sic*] the knock, but we could see people inside of the living room area walking around.

\* \* \* \* \* \*

I saw a heavyset black lady in the living room area. Officer MacIntire then again knocked and then tried the doorknob. When he tried the doorknob the door came open. We entered the living room area, announced our-

selves as police officers, and [that we] had with us a Search Warrant for that residence and one Kevin Davis.

As for the time that elapsed between the first knocking and the entry into the premises, Officer Kaisner, on cross-examination, agreed with defendant's counsel that "ten, fifteen seconds" passed by, "[t]hen Officer MacIntire knocked again and then he tried the doorknob ... and the door came open...." In particular, Officer Kaisner stated: "As the door came open, I announced myself as a police officer, and then entered—then I guess I was stepping into the open door as I was doing that...."

█ In examining a claim that Rule 2007 has been violated, the first step is to consider whether the law enforcement officers provided notice to the occupants of the premises to be searched.[2] *Parsons,* supra.

█ Even though there was no technical compliance with Rule 2007's notice requirement, this does not *ipso facto* necessitate a finding that the evidence seized *must* be suppressed. As was noted in *Commonwealth v. Mason,* 507 Pa. 396, 406–07, 490 A.2d 421, 426 (1985):

> ... exclusion/suppression of evidence is not an appropriate remedy for every violation of the Pennsylvania Rules of Criminal Procedure concerning searches and seizures. It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad faith or has substantially prejudiced the defendant that exclusion *may* be an appropriate remedy. [Emphasis in original]

In the case at bar, because of our conclusion that the police had a valid search warrant, the police would have been entitled to enter the premises forcibly and conduct a search with or without the permission of the occupants. See *Commonwealth v. Morgan,* 517 Pa. 93, 534 A.2d 1054, 1056 (1987). Moreover, the manner and method of entry by the police was made without injury to the persons or property, hence the purpose of Rule 2007 in preventing violence to persons and damage to property was fulfilled. Id.

2. There was no evidence that exigent circumstances existed when the police first arrived at the home. See Pa.R.Crim.P. 2007.

Therefore, given the repeated knocking on the front door to the defendant's premises, the proximity to the occupants (in the living room adjacent) to the entry during the repeated notification efforts ("knocking") and the passage of *more than* 15 seconds,[3] we find the police's identification of themselves and their purpose would have been a futile gesture. See *Morgan,* supra; *Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583 (1982) and contrast with *Commonwealth v. Chambers,* 385 Pa.Super. 605, 561 A.2d 1257 (1989).

Weighing the benefits of deterring police misconduct against the costs of excluding otherwise reliable evidence, we hold that the lower court erred in suppressing the evidence in this case.

Order reversed; jurisdiction relinquished.

HOFFMAN, J. files a dissenting statement.

3. In *Commonwealth v. Burstin,* 259 Pa.Super. 584, 393 A.2d 979 (1978), this Court concluded that because the police heard voices within close proximity to the door where they had knocked, this provided the occupants with enough time to have answered the door during the 20 seconds which had elapsed. *Id.,* 259 Pa.Superior Ct. at 586–88, 393 A.2d at 981. Likewise, at bar, the location of the occupants of the residence during the repeated knocking by the police and the lapse of more than 15 seconds was "reasonably long enough" to provide the occupants with an opportunity to surrender the premises voluntarily. *Id.* To hold otherwise would require the police to stand idly by and await until the occupant(s) of a residence decides to respond to knocking, even though the police can observe individuals inside of a home within hearing distance of their knocking.

Although there were no exigent circumstances present at bar, we find that the police's conduct, in light of the particular circumstances confronting them, was proper and not violative of Pa.R.Crim.P. 2007's "knock and announce" provisions.

The passage of time being a matter of weighing the circumstances of the particular case, we conclude that the conduct of the police was proper with regard to an occupied structure after repeated efforts to give notice of their presence and the non-acknowledgment of the occupants to their willingness to respond to their presence, while all the time the police had a valid search warrant for the premises. This scenario justified the police's entry, which occurred peaceably and without injury to person or damage to property. We find the procedure followed to have been proper and not violative of the spirit of Rule 2007's "knock and announce" procedure.

HOFFMAN, Judge, dissenting:

I must respectfully dissent. First, I cannot agree that the information contained in the affidavit supports a finding of probable cause to search appellant's home. Specifically, I fail to see how the fact that appellant was seen selling cocaine on the street forms a substantial basis to support the magistrate's conclusion that probable cause existed to believe that contraband would be found in appellant's home. *See Commonwealth v. Melilli*, 521 Pa. 405, 418–19, 555 A.2d 1254, 1261 (1989) (citation omitted). This is not a case where the informant said that he or she had seen contraband in appellant's home, or appellant had told the informant that he had drugs stored there. *Cf. Commonwealth v. Frye*, 242 Pa.Super. 144, 363 A.2d 1201 (1976) (construing *Aguilar–Spinelli* two prong analysis of affidavit and holding that facts supported sufficient showing of probable cause to issue search warrant of suspect's residence). Instead, the informant stated that he or she had seen appellant selling cocaine and had seen him "going to and coming from 408 Pancoast Pl[ace]." Furthermore, the informant saw appellant entering his residence *"after* he had made some sales or was going in for the night." Thus, appellant was not seen entering and exiting his home as part of the drug transaction. The majority acknowledges that the facts here present a close case, but maintains that because appellant was seen selling cocaine and "going to and coming from" his home, probable cause existed to search the premises. However, although the affidavit establishes that appellant probably resided at 408 Pancoast Place, I would find that the lack of a substantial nexus between the street crime and the appellant's residence renders the warrant invalid. *See Commonwealth v. Way*, 342 Pa.Super. 341, 492 A.2d 1151 (1985). Thus, I would agree with the trial court that the affidavit "failed to give rise to probable cause to believe that drugs would be found at [appellant's home]." Suppression Court Opinion at 4.

Second, I also agree with the trial court that the evidence should have been suppressed for the alternative reason that

the police officers' manner of entry into appellant's home violated his Fourth Amendment rights. *See* U.S. Const. amend. IV. The critical inquiry is whether sufficient time elapsed in which the police could form a reasonable belief that the occupants of the premises did not intend to voluntarily or peaceably surrender the premises. *Commonwealth v. Parsons*, 391 Pa.Super. 273, 279, 570 A.2d 1328, 1332 (1990) (citation omitted). Here, unlike *Parsons*, the officers did not testify that they articulated their identity, authority, and purpose to the occupants before they entered the dwelling. Thus, I would find that the officers failed to give adequate notice before opening the door to the premises. *See id.;* Pa.R.Crim.P. 2007. For these reasons, I would affirm the order of the trial court.