J-S32004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARLENE V. WORRELL | : | |
| | : | |
| Appellant | : | No. 2980 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 30, 2023
In the Court of Common Pleas of Lehigh County
Criminal Division at No:  CP-39-CR-0004597-2019

BEFORE:  LAZARUS, P.J., STABILE, J., and KING, J.

MEMORANDUM BY STABILE, J.:                **FILED DECEMBER 20, 2024**

Appellant, Charlene V. Worrell, appeals from the judgment of sentence imposed by the Court of Common Pleas of Lehigh County on October 30, 2023. Appellant raises issues relating to the trial court's denial of her motion to suppress a search warrant.  Upon review, we affirm.

In October 2019, detectives secured a search warrant for Appellant's residence at 322 North Jordan Street, Allentown, Pennsylvania, as part of a narcotics investigation.  The trial court made the following findings of facts relative to the issuance of the search warrant[1]:

> The affidavit [of probable cause] indicates the [confidential informant ("CI")] provided information leading to arrests and seizures of controlled substances and firearms in the past;

---

[1] We limit our scope of review to the record created during the suppression hearing, since when reviewing a motion to suppress evidence, we may not look beyond the suppression record.  ***In re L.J.,*** 79 A.3d 1073, 1080 (Pa. 2013).

detectives were able to corroborate the information by their own observations; and the CI participated in the criminal activity. The CI identified James Waugh as the person he knows to distribute controlled substances; on two occasions, the CI advised detectives that Waugh stated he needed to go to his "stash house" in Allentown; on both occasions, Waugh was subsequently observed by detectives driving to and entering [Appellant's residence at] 322 North Jordan Street residence in Allentown. After each occasion, Waugh met with the CI at a predetermined location and provided him with a substance; after meeting with Waugh, the CI met with detectives and turned over a quantity of a substance that field tested positive for fentanyl; and the CI indicated he/she received the substance from Waugh.

Trial Court Opinion, 4/20/21, at 7-8 (citations omitted). The trial court denied Appellant's motion to suppress. The case proceeded to a trial, wherein Appellant was found guilty of possession with intent to manufacture or deliver ("PWI"), possession of a controlled substance, possession of drug paraphernalia, and conspiracy-PWI. Sentencing was deferred for a pre-sentence investigation. Appellant was sentenced to an aggregate term of 84 to 168 months' imprisonment, followed by 12 months of probation. This timely appealed followed. Both Appellant and the trial court complied with Rule 1925.

Appellant raises four issues for our review:

1. Should the lower court have suppressed the evidence seized during the search of Appellant's residence because of the absence of probable cause for the issuance of a search warrant?

2. Should the lower court have suppressed the evidence seized during a warrantless search of Appellant's vehicle because of the absence of probable cause to justify same?

3. Should the lower court have suppressed the evidence seized during the warrantless search of Appellant's vehicle because of the absence of a search warrant authorizing same?

4. Should the lower court have suppressed the evidence seized during the warrantless search of Appellant's vehicle because of the unlawful seizure and detention of Appellant?

Appellant's Brief, at 4-5.

Preliminarily, we must determine whether we have jurisdiction to consider issues 2-4 as they relate to the warrantless search of Appellant's vehicle. Appellant was charged in two separate criminal complaints based on contraband recovered from her vehicle (CP-39-CR-4596-2019) and contraband recovered from her residence (CP-39-CR-4597-2019). Following the suppression hearing, the Commonwealth *nolle prossed* the case relative to the contraband found in Appellant's vehicle (4596-2019) and stated that it would not use evidence of the contraband found in Appellant's vehicle in its prosecution of the instant case (4597-2019). **See** Commonwealth's Brief in Opposition of the Defendant's Omnibus Pre-trial Motions, 3/12/21, at 4 (unpaginated).

"A notice of appeal must be filed in each docket in which the order has been entered." Pa.R.A.P. 902(a). "The failure to file a notice of appeal within the time allowed . . . renders an appeal invalid." Pa.R.A.P. 902(b)(2). The charges related to the warrantless search of Appellant's vehicle were filed on a separate docket number. Notwithstanding that the charges have since been *nolle prossed*, Appellant did not file a notice of appeal on 4596-2019. Therefore, we lack jurisdiction to address the merits of issues 2-4.

We now turn to Appellant's remaining issue. She claims that the trial court erred in denying her motion to suppress the search warrant of her residence because the affidavit of probable cause failed to establish "a clear nexus between the crime under investigation and the search proposed in the warrant." Appellant's Brief, at 34. She contends that the reliability and veracity of the information provided by the CI was not corroborated by police. *See id.*, at 33-34. We disagree.

Our standard of review when addressing a challenge to the denial of a suppression motion is

> limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (internal citations omitted). Our scope of review is limited to the record created during the suppression hearing. *In re L.J.*, *supra*.

To be valid, a search warrant must be supported by probable cause. *Commonwealth v. Jacoby*, 170 A.3d 1065, 1081 (Pa. 2017). Regarding search warrants, our Supreme Court has explained:

> The existence of probable cause is measured by examining the totality of the circumstances. Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he [or she] has reasonably trustworthy information are sufficient in and of themselves to warrant a [person] of reasonable

- 4 -

caution in the belief that a search should be conducted. A magisterial district judge, when deciding whether to issue a search warrant, must make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit . . . including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Conversely, [a] court reviewing a search warrant determines only if a substantial basis existed for the magistrate to find probable cause.

*Id.* at 1081-82 (internal citations and quotation marks omitted). In determining whether a warrant was supported by probable cause, our scope of review is limited to the four corners of the accompanying affidavit. *Commonwealth v. Coleman*, 830 A.2d 554, 560 (Pa. 2003). A police officer's experience and training may be relevant factors in the probable cause determination. *See Commonwealth v. Thompson*, 985 A.2d 928, 935 (Pa. 2009). "Probable cause, at a minimum, must be individualized to the suspect and the circumstances of the case; it requires more than generalized statements about human behavior that are unsupported by the specific facts." *Jacoby*, 170 A.3d at 1084.

In finding that the warrant was supported by probable cause, the trial court stated:

The affidavit [of probable cause] indicates the [confidential informant ("CI")] provided information leading to arrests and seizures of controlled substances and firearms in the past; detectives were able to corroborate the information by their own observations; and the CI participated in the criminal activity. The CI identified James Waugh as the person he knows to distribute controlled substances; on two occasions, the CI advised detectives that Waugh stated he needed to go to his "stash house" in Allentown; on both occasions, Waugh was subsequently observed by detectives driving to and entering [Appellant's residence at]

- 5 -

322 North Jordan Street residence in Allentown. After each occasion, Waugh met with the CI at a predetermined location and provided him with a substance; after meeting with Waugh, the CI met with detectives and turned over a quantity of a substance that field tested positive for fentanyl; and the CI indicated he/she received the substance from Waugh.

Trial Court Opinion, 4/20/21, at 7-8.

The affidavit of probable cause contained the following averments:

In September of 2019, Detective Huff began speaking with a [CI] about a black male in his fifties, who distributes heroin and prescription medication out of 411 Pawnee St. Bethlehem, Pa 18015. The [CI] gets in touch with the male by calling or texting cell phone number . . . .

Det. Huff searched [the phone number] on an internet data base and found the number to belong to James Waugh. Det. Huff then searched James Waugh in JNet and found a James Waugh with a DOB of 09/01/1965. A photograph of James Waugh was then shown to the [CI]. The [CI] was able to identif[y] James Waugh . . . as the male.

In early October, Detective Marques and Det. Huff met with a [CI] for the purpose of making a purchase of a controlled substance. The [CI] has been determined to be true, correct and reliable, the information provided by this [CI] has led to arrests, controlled substance seizures, and firearm seizures. The [CI] had previously been in contact with James Waugh and knew that Waugh was looking for a ride to Waugh's "stash house" in Allentown from an address in Bethlehem. [Arrangements] for the purchase were made between the [CI] and Waugh. The [CI] and vehicle were searched for money and/or contraband and both were found free of the same. The [CI] was provided with a sum of US currency to conduct the transaction.

Waugh was observed leaving an address in Bethlehem City, Northampton County, constant surveillance was maintained on Waugh as he traveled to the 300 block of Jordan St. in the City of Allentown. Once in the 300 block of Jordan St., Waugh was observed walking to the front door of 322 N. Jordan St. . . . Waugh was observed standing at the front door on his phone and was then observed entering the door. A short time later Waugh was

observed exiting the front door of 322 N. Jordan St. Waugh was then observed travelling to a predetermined location and met with the [CI].

After meeting with Waugh, the [CI] was observed traveling to a predetermined location. Once at the predetermined location the [CI] turned over an amount of a controlled substance that later field tested positive for fentanyl. The [CI] and vehicle were again searched for money and/or contraband and found free of the same. The [CI] stated that he/she met with Waugh after Waugh went to 322 Jordan St. and exchanged the provided US currency for the controlled substance.

During this controlled purchase the [CI] and Waugh were kept under surveillance. The [CI] was not observed meeting with any other persons other than Waugh. The suspected controlled substance . . . field tested positive for fentanyl.

A search was conducted for 322 N. Jordan St. in the Lehigh County Assessment, the search returned that 322 N. Jordan St. is listed as a single-family row home owned by Vanessa Holding Company. One mailbox was observed on the outside of the door at 322 N. Jordan St.

In the middle of October 2019, surveillance was conducted on 322 N. Jordan St. During this time, a male was observed exiting 322 N. Jordan St. moving a Kia Soul . . . then reentering 322 N. Jordan St. Also, during this time, a female was observed pulling up to the 300 block of Jordan St. in a Jetta . . . . Both vehicles returned to [Appellant]. . . . [Appellant] was observed going into 322 N. Jordan St.

A criminal history check of [Appellant] showed a felony drug conviction from Union County, New Jersey.

Within the past 48 hours [of October 16, 2019], Det. Huff met with a [CI] for the purpose of making a purchase of a controlled substance. The [CI] has been determined to be true, correct and reliable, the information provided by this [CI] has led to arrests, controlled substance seizures, and firearm seizures. The [CI] had previously been in contact with James Waugh and knew that Waugh was looking for a ride to his "stash house" in Allentown to pick up product. [Arrangements] for the purchase of a controlled substance were made between the [CI] and Waugh. The [CI] and

vehicle were searched for money and/or contraband and both were found free of the same. The [CI] was provided a sum of US currency to conduct the transaction.

Waugh was observed leaving an address in Bethlehem City, Northampton County constant surveillance was maintained on Waugh as he travelled to the 300 block of Jordan St. in the City of Allentown. Once in the 300 block of Jordan St., Waugh was observed walking to the front door of 322 N. Jordan St. . . . Waugh was then observed entering the front door of 322 N. Jordan St. A short time later Waugh was observed exiting the front door of 322 N. Jordan St. Waugh was then observed travelling to a predetermined location and met with the [CI].

After meeting with Waugh, the [CI] was observed travelling to a predetermined location. Once at the predetermined location, the [CI] turned over an amount of a controlled substance, that later field tested positive for fentanyl. The [CI] and vehicle were again searched for money and/or contraband and found free of same. The [CI] stated that he/she gave Waugh the US currency right before Waugh went to 322 Jordan St., and then met with Waugh after Waugh went to 322 Jordan St., and was given the controlled substance, that later field tested positive for fentanyl. The [CI] also advised that [Waugh] keeps his drugs on Jordan St. with a female and pays the bills at Jordan St.

During this controlled purchase, the [CI] and Waugh were kept under surveillance. The [CI] was not observed meeting with any other persons other than Waugh.

N.T., Trial Volume II 7/19/23, Commonwealth's Exhibit 7, Affidavit of Probable Cause, ¶¶ 4-16 (cleaned up). The warrant authorized police to search for (1) fentanyl; (2) US currency; (3) cell phones; (4) items used in the distribution of controlled substances; and (5) indicia of occupancy, residency and/or ownership of the premises. *Id.*, Attachment A.

The instant case is analogous to ***Commonwealth v. Clark***, 28 A.3d 1284 (Pa. 2011). In ***Clark***, a reliable CI told police that a white male known as "Steve" packaged and distributed "cocaine from [his residence at] 4242

Salmon Street in Philadelphia, and makes deliveries of cocaine in a white Pontiac Grand AM[.]" **Clark**, 28 A.3d at 1285. Police conducted a controlled buy and observed a white male matching the description of "Steve" leave 4242 Salmon Street, enter a white Pontiac Grand AM, and drive to the pre-arranged site of the controlled buy. **Id.** After the transaction, police followed the white male directly back to 4242 Salmon Street where he parked and entered the residence. **Id.** Based on this information, police obtained a search warrant for 4242 Salmon Street. **Id.** at 1286.

The trial court suppressed the evidence, and this Court affirmed because the affidavit "did not expressly state how [the officer] knew that the CI was reliable, or how the CI knew that there were drugs in the residence." **Id.** at 1286. Moreover, the panel found that there was no nexus between the controlled buy and a search of the defendant's residence other than the fact that "Steve" left his home prior to the transaction and returned thereafter. **Id.**

Our Supreme Court reversed and noted that "[b]oth lower courts failed to look at the information as a whole, but examined and considered individual factors in a mechanical fashion, effectively nullifying the mandate to assess the totality of the circumstances." **Id.** at 1289. "[A] CI's veracity and basis of knowledge are but factors among the totality of the circumstances." **Id.** at 1288. "[A]n informant's tip may constitute probable cause where police independently corroborate the tip, **or** where the informant has provided

accurate information of criminal activity in the past, **or** where the informant himself participated in the criminal activity." **Id.** (emphasis in the original)

In **Clark**, our Supreme Court concluded that the lower courts

discounted the common sense import of the fact that after the controlled buy was arranged, the police observed [Clark] leave his residence in his vehicle, as precisely described by the CI, drive to a location, conduct the transaction, and immediately return to his residence. **This fact certainly connected the illegal transaction to [Clark's] residence, in a common sense, non-technical way** and permitted the issuing authority to conclude that drugs would likely be found in the residence.

**Id.** at 1291 (emphasis added). Moreover, the Supreme Court concluded that "a proper totality of the circumstances approach . . . supports a determination that the CI in this matter was "reliable," even though the affidavit did not state that the CI had previously provided information that led to arrests or convictions." **Id.** The **Clark** Court explained that "there is no talismanic recitation of a particular phrase with respect to 'reliability' or 'basis or knowledge' that will either be required or will suffice to conclusively establish, or conclusively disaffirm, the existence of probable cause." **Id.** at 1292. In reversing this Court, the Supreme Court held:

[P]robable cause to support the search warrant existed, even though the affidavit contained no explicit recitation whether the CI had previously supplied information leading to arrests, or whether the CI had previously been inside the subject residence, or whether [Clark] had told the CI there were drugs in the residence. The **probable cause** necessary to support the search warrant **existed because the information provided by the CI**, namely that [Clark] was packaging and distributing cocaine out of his residence, **was corroborated by independent police investigation**. The police observed [Clark] depart his residence, go directly to the site of a pre-arranged controlled buy, exchange

- 10 -

cocaine for money, and return directly to his residence. A common sense, non-technical reading of these facts properly established a fair probability that contraband or evidence of a crime would be found in the residence.

*Id.* (emphasis added).

Similarly, in *Commonwealth v. Kemp*, 195 A.3d 269 (Pa. Super. 2018), a reliable CI told police that he had purchased marijuana from Kemp on numerous occasions, and provided the cell phone number he used to purchase the drugs. *Kemp*, 195 A.3d at 272. Police set up a controlled buy and observed Kemp leave his residence, drive directly to the pre-arranged site and conduct the controlled buy. *Id.* at 273. Based on this information, officers obtained a search warrant for Kemp's residence. *Id.* at 274. The affidavit also stated: (1) Kemp was not followed back to his residence after the transaction; (2) the CI did not see drugs in Kemp's residence; and (3) no drug sales were observed inside or in front of Kemp's residence. *Id.* at 273-74.

On appeal, Kemp argued that the affidavit of probable cause "did not establish a fair probability that contraband would be discovered in his home." *Id.* at 275. This Court disagreed and noted that "police twice observed [Kemp] leaving his home and proceeding directly to the site of a controlled buy;" therefore, concluded that *Clark* controlled the outcome of the case. *Id.* at 275-76.

Here, we conclude that, within the four corners of the affidavit, a substantial basis existed for the magistrate to find probable cause. *See Jacoby, supra.* As in *Clark*, a reliable CI informed the affiant that he

- 11 -

purchased controlled substances from a black male, later identified as James Waugh, and that Waugh stored his drugs at a "stash house" with a female in Allentown. The information provided by the CI was corroborated. Police arranged two controlled buys and maintained constant surveillance of the CI and Waugh. On both occasions, Waugh was observed leaving his residence, travelling to 322 N. Jordan St., and then driving directly to the pre-determined site for the controlled buy. On one occasion, the CI provided Waugh money *before* Waugh travelled to 322 N. Jordan St., and Waugh returned with the controlled substance.

When viewed in a commonsense, non-technical way, the affidavit provided probable cause to believe drugs would be found in Appellant's residence. "[T]he law does not require that the information in a warrant affidavit establish with absolute certainty that the object of the search will be found at the stated location, nor does it demand that the affidavit information preclude all possibility that the sought after article is not secreted in another location." *Clark*, 28 A.3d at 1291 (citing *Commonwealth v. Davis*, 595 A.2d 1216, 1222 (Pa. Super. 1991). This Court does not conduct a *de novo* review of the issuing authority's probable cause determination, but review whether there was substantial evidence in the suppression record supporting the decision to issue the warrant. *See Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010). Accordingly, we conclude that the affidavit of probable cause contained sufficient information to provide a nexus between the residence and

the illegal activity and that the trial court did not err in finding the magistrate had a substantial basis to issue the warrant.

Judgment of sentence affirmed.

Judge King joins the memorandum.

President Judge Lazarus files a dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/20/2024