J-S22027-18

2018 PA Super 237

COMMONWEALTH OF PENNSYLVANIA     IN THE SUPERIOR COURT
OF PENNSYLVANIA

Appellee

v.

AUBREY KEMP

Appellant     No. 1129 EDA 2017

Appeal from the Judgment of Sentence Entered March 2, 2017
In the Court of Common Pleas of Delaware County
Criminal Division at No: CP-23-CR-0002340-2015

BEFORE:  BENDER, P.J.E., STABILE, and PLATT,[*] JJ.

OPINION BY STABILE, J.:     **FILED AUGUST 29, 2018**

Appellant, Aubrey Kemp, appeals from the March 2, 2017 judgment of sentence imposing 11½ to 23 months of incarceration for possession with intent to deliver ("PWID") marijuana.  We vacate and remand for resentencing.

In this appeal, Appellant challenges the trial court's denial of his pretrial motion to suppress evidence.  He also challenges the trial court's computation of the applicable sentencing guidelines.  The Commonwealth concedes that resentencing is necessary.  Regarding the suppression issues, the trial court made the following findings of fact:

1. [Sergeant] Kenneth Rutherford, Jr. of the Lansdowne Borough Police Department has been a police officer for 16 years, eight years of which he was an investigator and seven years in which

---

[*] Retired Senior Judge assigned to the Superior Court.

he worked in the Delaware County Criminal Investigation Division, who has, in these capacities also worked as an undercover police officer.

2. [Sergeant] Rutherford is on the teaching staff of the Pennsylvania Attorney General's office Top Gun Undercover Drug Enforcement training school.

3. As set forth in the Affidavit of Probable Cause for the Search Warrant, [Sergeant] Rutherford has extensive training in illegal narcotics and has conducted hundreds of investigations involving the sale of illegal narcotics. While acting in undercover capacity, he has purchased various types of illegal drugs in excess of 200 times.

4. In March of 2015, [Sergeant] Rutherford, the affiant in this case, spoke with a reliable confidential informant (hereinafter "CI") and the basis of the reliability is set forth in the Affidavit of Probable Cause for the search warrant.

5. The CI told [Sergeant] Rutherford that he had purchased marijuana from [Appellant] numerous times over the past couple of years. The CI provided the [sic] [Sergeant] Rutherford with [Appellant's] cell phone number, and the CI used the number to arrange sales of marijuana. The CI described in detail the type of vehicles that [Appellant] usually operated while conducting the sales of marijuana, one being a Jeep Cherokee and the other being a white Cadillac DTS.

6. The CI also said he knew [Appellant] to be a Septa bus driver.

7. The CI said he had purchased marijuana numerous times in the past six months from [Appellant] and, as stated above, he had purchased marijuana over the past several years from [Appellant].

8. [Sergeant] Rutherford investigated the cell phone number given to him by the CI and said cell phone number was registered to [Appellant].

9. [Sergeant] Rutherford, through prior contact, knew [Appellant] and knew his residence to be 908 Bell Avenue, Yeadon, PA. [Sergeant] Rutherford also knew [Appellant] was a Septa bus driver. [Sergeant] Rutherford also knew through prior contact,

that [Appellant] had been involved in a motor vehicle accident while driving a Septa bus.

10.    A J-Net search for [Appellant] disclosed [Appellant's] operator's license number and address, 908 Bell Avenue, Yeadon, PA.

11.    During the third week of March 2015, [Sergeant] Rutherford met with the CI in order to set up a controlled purchase of marijuana from [Appellant].  The usual preliminary steps associated with a controlled buy were effectuated, i.e. a search of the CI to see if he had any controlled substance in his possession or any money.

12.    The CI called [Appellant] by dialing the above-referenced cell phone number to place an order for marijuana, and [Appellant] directed him to a certain location where the transaction would take place.

13.    The residence of [Appellant], 908 Bell Avenue, was under surveillance contemporaneous with this telephone call. [Appellant] was seen leaving 908 Bell Avenue and then entered a while Cadillac DTS.  [Appellant] made no stops after leaving 908 Bell Avenue to the point where he met the CI to make the sale of marijuana.

14.    The CI never left the sight of [Sergeant] Rutherford from the time he was patted down and checked for controlled substances and money.

15.    The exchange between the CI and [Appellant] was observed by [Sergeant] Rutherford.

16.    After the exchange, [Appellant] left the area of the exchange.  The CI returned to [Sergeant] Rutherford's location.

17.    The CI was checked for the money that had previously been provided to him and that money was not on his person.  The CI then gave the marijuana that he just purchased from [Appellant] to [Sergeant] Rutherford.  The CI told [Sergeant] Rutherford that he (the CI) had just purchased marijuana from [Appellant].

18.    Within 48 hours of the execution of the search warrant, the same scenario repeated itself.  Again, the CI made the call, [Appellant] left 908 Bell Avenue, got into his white Cadillac

DTS, made no stops between his home and the location of the exchange of marijuana and money. Again, all the proper steps were taken to see that this CI had no drugs on him before the exchange and when he returned, he had the marijuana and none of the money that was given to him by [Sergeant] Rutherford. Again, the CI said that he had just purchased drugs from [Appellant]. At no place in the Affidavit of Probable Cause is there any indication that [Appellant] was followed from the scene of the exchanges back into his house.

19. There was no purchase or exchange observed inside or in front of 908 Bell Avenue.

20. There is nothing in the warrant's affidavit of probable cause that says that the CI ever saw marijuana inside 908 Bell Avenue or if he ever bought or took possession of it while therein. The warrant's affidavit of probable cause similarly does not recite that the CI saw marijuana or took possession of marijuana while in [Appellant's] automobiles.

21. Based on all of the above, [Sergeant] Rutherford obtained a search warrant on March 31, 2015 to search [Appellant's] car and home. Said search warrant was timely served and executed and the marijuana and associated contraband was found inside the house along with a firearm.

22. [Sergeant] Rutherford executed the search warrant that same day, March 31, 2015, at approximately 6:05 p.m.

23. [Sergeant] Rutherford arrived to the residence approximately 30 minutes prior to the search and set up surveillance. During this time, he observed [Appellant] exiting 908 Bell Avenue. [Appellant] came down the front steps and walked down the driveway.

24. [Sergeant] Rutherford exited his vehicle and approached [Appellant]. They were standing at the sidewalk at the driveway.

25. [Sergeant] Rutherford identified himself as a police officer and advised [Appellant] that he had a search warrant for the residence.

26. [Appellant] was carrying a black plastic bag.

27. When [Sergeant] Rutherford approached him, [Appellant] sat the bag down and began to back away. Based upon these observations, [Appellant] was immediately handcuffed.

28. [Sergeant] Rutherford testified that he was aware that [Appellant] owned multiple firearms and had a permit to carry. He explained that in his experience, guns are often associated with drug dealing and are used by dealers to protect themselves.

29. Accordingly, [Sergeant] Rutherford conducted a pat down for officer's safety. A firearm, a Glock .40 caliber, was recovered on [Appellant's] person.

30. [Sergeant] Rutherford then explained that they were going to search the residence, and asked [Appellant] about the location of the dogs in the house. [Appellant] accompanied the officers as they entered the house.

31. While they were approaching the house, [Appellant] began to pull away. The officers then conducted a second search of his person and recovered marijuana in both his right sock and his left sock.

32. [Appellant] remained on the couch in the living room for the remaining duration of the search of the residence.

33. The court found the testimony of [Sergeant] Rutherford to be credible.

Trial Court Opinion, 6/22/17, at 2-5 (record citations omitted).

Appellant first argues that the affidavit of probable cause was not sufficient to support the issuance of a warrant for the search of his home. The affidavit set forth the facts recited above—*i.e.*, that Appellant participated in two controlled buys for which he proceeded directly from his home to the point of sale. As the trial court noted, the affidavit did not reflect that Appellant participated in drug transactions in or near his home. Nor did the affidavit reflect that the CI ever saw drugs or drug paraphernalia inside Appellant's

- 5 -

home. For these reasons, Appellant argues the affidavit did not establish a fair probability that contraband would be discovered in his home. We disagree.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (citations omitted).

"The Fourth Amendment, by its text, has a strong preference for searches conducted pursuant to warrants." *Commonwealth v. Leed*, ___ A.3d ___, 2018 WL 2452659, at *5 (Pa. June 1, 2018). A neutral and detached magistrate must determine whether probable cause supports issuance of a warrant. *Id.* "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Id.* "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not

take the form of *de novo* review[, and] a magistrate's probable cause determination should receive deference from the reviewing courts." ***Id.***

Appellant relies on ***Commonwealth v. Kline***, 335 A.2d 361, 364 (Pa. Super. 1975) in which this Court explained that "[p]robable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home." In ***Kline***, several witnesses testified to purchasing drugs from the defendant, but no evidence linked the defendant's drug dealing activity to his apartment. ***Id.***

Appellant also relies on ***Commonwealth v. Way***, 492 A.2d 1151 (Pa. Super. 1985), in which police followed the defendant from an arranged transaction to a location that turned out to be the defendant's home. No evidenced established the defendant's whereabouts prior to the transaction. We held the warrant to be invalid because of the lack of an evidentiary nexus between the criminal activity and the defendant's home. ***Id.*** at 1154-55.

Instantly, police twice observed Appellant leaving his home and proceeding directly to the site of a controlled buy. Thus, unlike ***Kline*** and ***Way***, the affidavit does establish a nexus between Appellant's home and the crime under investigation. In a very similar case, our Supreme Court wrote:

> Here, the trial court and Superior Court discounted the common sense import of the fact that after the controlled buy was arranged, the police observed Appellee leave his residence in his vehicle, as precisely described by the CI, drive to a location, conduct the transaction, and immediately return to his residence. This fact certainly connected the illegal transaction to Appellee's residence, in a common sense, non-technical way, and permitted the issuing authority to conclude that drugs would likely be found

in the residence. Although the circumstances of the observed transaction also potentially pointed to Appellee's vehicle as a storage location for the drugs, the law does not require that the information in a warrant affidavit establish with absolute certainty that the object of the search will be found at the stated location, nor does it demand that the affidavit information preclude all possibility that the sought after article is not secreted in another location.

*Commonwealth v. Clark*, 28 A.3d 1284, 1291 (Pa. 2011). We find *Clark* directly on point and controlling in this case. We therefore reject Appellant's first argument.

Next, Appellant challenges the detention and frisks that police conducted when they arrived at Appellant's home to execute the search warrant. As noted above, Appellant was walking down his front steps when Sergeant Rutherford arrived to execute the warrant. Police, when executing a valid search warrant, "have the authority to detain persons who are on the premises, or who have recently exited and are outside the premises." *Commonwealth v. Martinez*, 649 A.2d 143, 147 (Pa. Super. 1994). Thus, the detention was clearly justified.

Regarding the frisks, the record establishes that Appellant had been observed on two occasions leaving his home to conduct drug transactions. Appellant appeared uneasy and backed away from Sergeant Rutherford when the latter approached and announced the warrant, and Appellant dropped a bag he was carrying. Sergeant Rutherford was aware of Appellant's firearms license and his ownership of multiple firearms. The law provides:

It is well-established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude that criminal activity may be afoot. Moreover, if the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons. Since the sole justification for a **Terry**[1] search is the protection of the officer or others nearby, such a protective search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence.

**Commonwealth v. Clemens**, 66 A.3d 373, 381 (Pa. Super. 2013).

Given the facts of record and the applicable law, we believe police were clearly justified in frisking Appellant for weapons. The second, more invasive frisk occurred after Appellant attempted to pull away from the police officers. Appellant argues this frisk was invalid under **Commonwealth v. DeWitt**, 608 A.2d 1030 (Pa. 1992). There, officers noticed a vehicle with its interior lights on parked partially in a parking lot and partially on the berm of a road. **Id.** at 1031. Police pulled alongside the vehicle to investigate, whereupon the interior lights were turned off and the occupants engaged in furtive movements. **Id.** at 1032. The vehicle then began to pull away. **Id.** Our Supreme Court held that the vehicle's flight and the occupants' furtive movements did not, in and of themselves, justify an investigative vehicle stop. **Id.** at 1034.

_____

1 **Terry v. Ohio**, 392 U.S. 1 (1968).

Appellant argues that, similar to **DeWitt**, police did not observe any criminal activity on Appellant's part prior to the detention and frisks. Appellant's brief at 25. Appellant's reliance on **DeWitt** is misplaced for several reasons. First, **DeWitt** did not analyze the validity of a frisk. Second, Appellant ignores the fact that police were at his home to execute a search warrant based on their prior observations of his criminal conduct. **DeWitt** is inapposite, and Appellant has failed to develop a meritorious argument against the validity of the second frisk.

Finally, Appellant argues the trial court applied the incorrect sentencing guideline range and imposed an aggravated range sentence despite the court's stated intent to impose a mitigated range sentence. The trial court, in reliance on a 12 to 30 month guideline range, sentenced Appellant to 11½ to 23 months of incarceration, as noted above. The parties agree that the appropriate guideline range, given Appellant's zero prior record score, was restorative sanctions to nine months (plus or minus three months). The error occurred because the 12 to 30 month guideline range included a school zone enhancement. The Commonwealth concedes that it failed to establish the proximity of the crime to a school zone. While the duration of Appellant's sentence remains within the trial court's discretion,[2] we will vacate the

---

[2] A challenge to the calculation of the applicable sentencing guidelines relates to the discretionary aspects of a sentence. **Commonwealth v. O'Bidos**, 849 A.2d 243, 253 (Pa. Super. 2004), **appeal denied**, 860 A.2d 123 (Pa. 2004).

judgment of sentence and remand for resentencing based upon consideration of the appropriate guideline range.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/18

---

Appellant properly preserved this argument in post-sentence motions and in his Pa.R.A.P. 1925(b) and 2119(f) statements.