**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
HAFIZ HASSON LOWE :
:
Appellant : No. 600 WDA 2020

Appeal from the Judgment of Sentence Entered August 28, 2019
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0001060-2018

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
HAFIZ H. LOWE :
:
Appellant : No. 609 WDA 2020

Appeal from the Judgment of Sentence Entered August 28, 2019
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0001050-2018

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED:  July 30, 2021**

Appellant Hafiz Hasson Lowe appeals from the judgments of sentence imposed following his convictions for possession with intent to deliver (PWID) and related offenses.  Appellant argues that the trial court erred in denying his motion to suppress.  Appellant also challenges the weight and sufficiency of the evidence supporting his convictions.  We vacate Appellant's judgment

of sentence and remand the matter for further proceedings consistent with this memorandum.

The trial court summarized the underlying facts of this matter as follows:

On June 27, 2018, Richland Police Department (RPD) patrolmen Todd Miller ([Officer] Miller) and Daniel Mock ([Officer] Mock) responded to a call of retail theft at the Wal-Mart store located in the Centre Town Plaza in Richland Township, Cambria County. Wal-Mart theft prevention employee Brad Davis (Davis) had called the 911 non-emergency number to report that two African-American men, later identified as [Appellant] and Michael O. Jackson (Jackson), were in the process of leaving the store with merchandise they did not pay for. Davis had watched Jackson and [Appellant] in the store fill Rubbermaid storage bins with baby formula and articles of men's clothing and then place the lids on the bins to conceal the merchandise. The two then went to separate self-checkout lanes where Davis watched them scan and pay for only the bins and not the merchandise inside.

Davis attempted to stop Jackson after he exited the store by identifying himself as a Wal-Mart employee and asking Jackson about the unpaid merchandise in the bins. Jackson kept walking out of the store pushing a shopping cart with the bins inside with Davis following him. Jackson walked from along the front of the store in the direction of another plaza containing a Chili's restaurant. Davis watched him while remaining on the phone with 911 dispatch and providing them with updated descriptions of Jackson and [Appellant], as well current information on their actions. [Officer] Mock arrived at the Wal-Mart and briefly spoke with Davis who informed him Jackson had fled towards Chili's. [Officer] Miller had arrived from the opposite direction and both officers drove toward Chili's looking for any persons that matched the description provided by Davis.

[Officer] Mock was the first to see Jackson walking through the Chili's parking lot and matching the description Davis had provided. [Officer] Mock activated his emergency light, stopped his vehicle, exited the vehicle and told Jackson to come over to him. Jackson looked at [Officer] Mock and then abandoned his cart running across the parking lot. Jackson, with [Officer] Mock pursuing him on foot, eventually crossed a five-lane highway and entered a third shopping plaza, the College Park Plaza. [Officer]

Miller meanwhile drove his vehicle to intercept Jackson in the College Park Plaza. [Officer] Mock was able to catch up to Jackson and, once he was close enough, he twice instructed Jackson to stop or he would be tased. Jackson ignored both commands and [Officer] Mock eventually fired his taser at Jackson and delivered a five-second electrical shock through the taser's probes, causing Jackson to fall onto the pavement of the parking lot. At this point, [Officer] Miller had stopped and exited his vehicle and approached Jackson and [Officer] Mock to assist in the arrest.

Once Jackson was on the ground, [Officer] Mock and [Officer] Miller gave him commands to roll over onto his stomach and put his hands out to his sides. Jackson eventually rolled over but did not obey commands to show the officers his hands instead keeping them underneath his body. [Officer] Mock twice told Jackson to show the officers his hands or he would be tased again. Jackson did not comply with either of these commands and [Officer] Mock activated his taser to deliver a second five second shock to Jackson. Following this, Jackson complied and moved his hands out from under his body into the officers' view at which time he was handcuffed and taken into custody. An ambulance was eventually called to transport Jackson to the hospital since he struck his head on the pavement when he fell, [and Officer] Mock accompanied Jackson to the hospital.

RPD patrol sergeant Jason Shuman ([Officer] Shuman) responded to the call to provide assistance to [Officer] Mock and [Officer] Miller. [Officer] Shuman arrived at the Wal-Mart plaza shortly after [Officer] Miller and [Officer] Mock had departed to chase Jackson and he met the officers in the College Park Plaza. Once he determined they had the situation under control, he returned to the Wal-Mart to speak with Davis. Davis informed [Officer] Shuman that after the officers left, he returned to the security office and reviewed surveillance video in an effort to determine where [Appellant] had gone. Davis was able to find [Appellant] on the video and watched him walk through the parking lot and enter an SUV. [Officer] Shuman had Davis get in his patrol vehicle and direct him to the correct SUV. Once at the SUV, [Officer] Shuman had Davis remain in the vehicle while he exited and drew his sidearm. [Officer] Shuman approached the SUV Davis indicated and through the window [he] observed [Appellant] lying prone across the back seat with a sweatshirt covering his face. Shuman ordered [Appellant] to show his hands and exit the vehicle and [Appellant] complied. [Officer] Shuman immediately handcuffed [Appellant].

Once [Appellant] was in custody, Davis informed [Officer] Shuman that [Appellant] had two bins loaded with stolen merchandise with him when he fled. [Officer] Shuman was able to see two bins in the rear cargo area of the SUV, so he opened the rear hatch and retrieved the bins. Once he had the bins outside the SUV, [Officer] Shuman opened them and Davis identified the merchandise as being stolen. [Officer] Shuman gave the bins and their contents to Davis in order for Davis to determine the value of the stolen merchandise. Thomas Keirn (Keirn) arrived on scene shortly after Shuman had taken Lowe into custody. [Officer] Keirn and Shuman were looking through the SUV windows to determine if any other stolen merchandise was inside when they observed what appeared to be a handgun partially sticking out from under the front driver's seat. At that point, [Officer] Keirn decided to impound the SUV and obtain a search warrant in order to recover the handgun and any stolen merchandise that may still be in the vehicle.

[Officer] Keirn determined that the SUV was owned by a rental company in Philadelphia and was leased to Jackson. [Officer] Keirn obtained a search warrant for the SUV from Magisterial District Judge Susan Gindlesperger (Gindlesperger) on June 28, 2018, with the SUV having been in RPO custody since it was seized. [Officer] Keirn and [Officer] Mock executed the search warrant the same day it was issued. The officers determined that the handgun that was observed was in reality a pellet gun under the driver's seat. In the rear cargo area the officers found a brown duffle bag containing 96 vials of suspected crack cocaine and 96 glassine stamp bags containing suspected heroin. Also in the cargo was a brown duffle bag that contained empty glassine stamp bags and a letter addressed to Jackson at a Philadelphia address. Finally, the officers found 40 glassine stamp bags containing suspected heroin in the cup holder of the driver's side front door and several cell phones. Charges were filed against [Appellant] and Jackson relative to the retail theft and the drugs.

Supp. Ct. Op. and Order, 4/2/19, at 2-5.

On August 24, 2018, the Commonwealth charged Appellant with offenses at two separate docket numbers. At Docket No. 1050-2018,

Appellant was charged with retail theft.[1]  At Docket No. 1060-2018, Appellant was charged two counts each of PWID and possession of a controlled substance and one count each of conspiracy and possession of drug paraphernalia.[2]

Appellant subsequently filed a motion to suppress physical evidence in which he argued, in part, that both the arrest and the warrantless SUV search were "illegal and in violation of the Fourth and Fourteenth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution."[3]  Omnibus Pretrial Mot., 10/23/18, at 5 (unpaginated). Appellant further claimed that although police subsequently obtained a search warrant for the SUV, the warrant was defective because it was based on the "initial illegal entry into the vehicle" and was therefore "fruit of the poisonous tree." *Id.*

Following a suppression hearing on February 25, 2019, the trial court issued an order and opinion denying Appellant's motion.  Specifically, the trial court concluded that (1) police had probable cause to arrest Appellant; (2) because police had probable cause to search the SUV, the warrantless search was valid under the automobile exception adopted by our Supreme Court in

---

[1] 18 Pa.C.S. § 3929(a)(1).

[2] 35 P.S. §§ 780-113(a)(30), (a)(16), 18 Pa.C.S. § 903, and 35 P.S. § 780-113(a)(32), respectively.

[3] At the suppression hearing, Appellant's counsel further argued that there were no exigent circumstances justifying the warrantless vehicle search.  *See* N.T. Suppression Hr'g, 2/25/19, at 57.

*Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014); and (3) the facts contained in the affidavit of probable cause provided sufficient basis for the search warrant. *See* Trial Ct. Op. & Order, 4/2/19, at 5-13.

On April 11, 2019, a jury convicted Appellant of all charges. On August 28, 2019, the trial court sentenced Appellant to an aggregate term of three-and-a-half to twenty-two years' incarceration. Appellant subsequently filed timely notices of appeal[4] and a court-ordered Rule 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues:

1. Whether the trial court erred in denying Appellant's motion to suppress physical evidence seized from the parked vehicle in which Appellant was a passenger and any evidence seized from the stop and seizure of Appellant as there was no probable cause or reasonable suspicion to justify such a stop and seizure?

2. Whether the trial court erred and abused its discretion in denying Appellant's post-sentence motion for a judgment of acquittal or a new trial given that there was insufficient evidence presented to the jury to establish Appellant's guilt beyond a reasonable doubt as to the charges of possession with intent to deliver heroin and possession with intent to deliver cocaine?

3. Whether the trial court erred and abused its discretion in denying Appellant's post-sentence motion for a new trial based on the grounds that the verdict was against the weight of the evidence as to the charges of possession with intent to deliver heroin and possession with intent to deliver cocaine?

_____

[4] Appellant complied with our Supreme Court's decision in *Walker* by filing separate notices of appeal under each trial court docket number. *See Commonwealth v. Walker*, 185 A.3d 969, 971 (Pa. 2018). Both matters have been consolidated for appeal. *See* Order, 8/13/20.

Appellant's Brief at 6.

In his first issue, Appellant argues that the trial court erred in denying his suppression motion. *Id.* at 12. In support, Appellant reiterates his original claim that his arrest and the subsequent searches of the SUV were illegal. *Id.* at 13.

When reviewing a challenge to the denial of a suppression motion, our standard of review is

> limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (formatting altered).

Our Supreme Court has held that "[i]t is the Commonwealth's burden to establish that evidence was properly seized." *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013) (citing Pa.R.Crim.P. 581 cmt.). "The Fourth Amendment, by its text, has a strong preference for searches conducted pursuant to warrants." *Commonwealth v. Kemp*, 195 A.3d 269, 275 (Pa. Super. 2018)

(citation omitted). In **Gary**, a plurality of our Supreme Court held "with respect to a warrantless search of a motor vehicle that is supported by probable cause, Article I, Section 8 of the Pennsylvania Constitution affords no greater protection than the Fourth Amendment to the United States Constitution." **Gary**, 91 A.3d at 104. Therefore, the **Gary** Court adopted the federal automobile exception to the warrant requirement and held that police may conduct a warrantless vehicle search solely based on probable cause, with no exigency required beyond the inherent mobility of a motor vehicle. **See id.**

Importantly, while this appeal was pending, our Supreme Court issued a decision in **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020), which overruled **Gary** and its progeny. The **Alexander** Court held that Article I, Section 8 of the Pennsylvania Constitution affords greater protection than the Fourth Amendment of the United States Constitution. **Alexander**, 243 A.3d at 181. Therefore, the **Alexander** Court re-affirmed the pre-**Gary** line of cases and concluded that "the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." **Id.**

We recognize that **Gary** was the controlling law at the time of Appellant's suppression hearing. Indeed, it was also the law in effect at the time that Appellant filed his brief with this Court. However, because **Alexander** announced a new criminal rule while Appellant's case was on direct

appeal, he is entitled to the benefit of that decision.[5] *See Commonwealth v. Tilley*, 780 A.2d 649, 652 (Pa. 2001) (stating that a new rule of law applies to all criminal cases still pending on direct review, provided that the issue is properly preserved).

Further, like the defendant in *Alexander*, although Appellant challenged the lack of exigent circumstances before the trial court, the testimony at the suppression hearing "was not particularly directed at the exigencies of the situation." *Alexander*, 243 A.3d at 209. Therefore, further development of the record is necessary to determine whether Appellant is entitled to suppression under *Alexander*. *See id.* Therefore, consistent with *Alexander*, we vacate Appellant's judgment of sentence and remand the matter for a new suppression hearing.[6]

Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

_____

[5] The record reflects that Appellant sufficiently preserved his challenge to the exigency requirement before the suppression court. *See* N.T. Suppression Hr'g at 57 (arguing that there were no exigent circumstances justifying the warrantless vehicle search); *see also* Omnibus Pretrial Mot., 10/23/18, at 5 (unpaginated) (stating that the warrantless vehicle search was illegal and violated both the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution). In his brief, Appellant concedes under *Gary*, which was the controlling law at that time, police could justify a warrantless vehicle search solely based on probable cause. Under these circumstances, we decline to find waiver. *See generally Commonwealth v. Shaw*, 246 A.3d 879, 887 (Pa. Super. 2021) (vacating and remanding for further proceedings where further development of the record was necessary to decide the appellant's suppression claims in light of *Alexander*).

[6] In light of our disposition, we do not address Appellant's remaining claims.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/30/2021</u>