J-S32004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLENE V. WORRELL | : | |
| | : | |
| Appellant | : | No. 2980 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 30, 2023
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0004597-2019

BEFORE:  LAZARUS, P.J., STABILE, J., and KING, J.

DISSENTING MEMORANDUM BY LAZARUS, P.J.: **FILED DECEMBER 20, 2024**

The majority concludes that the affidavit of probable cause in the instant case "contained sufficient information to provide a nexus between [Worrell's] residence and the illegal activity and[, thus,] . . . the magistrate had a sufficient basis to issue the warrant."  I wholeheartedly disagree and, thus, respectfully dissent.

Here, the facts did not show that there was a "fair probability" that drugs would be found in Worrell's home where:  (1) the CI told authorities that Waugh "needed to go to his stash house *in Allentown*," but detectives never personally observed any suspicious activity or suspected drug sales at or outside of the 322 N. Jordan Street residence during their pre-warrant surveillance; (2) the investigating detectives never saw Waugh conduct *any* transactions at or outside of 322 N. Jordan Street; (3) the affidavit does not state that the CI had ever purchased drugs from Waugh or seen Waugh in

possession of drugs before;[1] and, most critically, (4) the detectives never observed the controlled buys between the CI and Waugh. The instant matter is equivalent to a case of "hearsay upon hearsay"—a CI tells authorities that a third-party (Waugh)—whom the officers have never observed engage in any transactions *at* all—stores his drugs at an unspecified address in a large city. Without *any* independent police corroboration of the "significant details disclosed by the informant," I believe suppression is warranted. ***Commonwealth v. Clark***, 28 A.3d 1284, 1288 (Pa. 2011). ***See Commonwealth v. Gagliardi***, 128 A.3d 790, 795 (Pa. Super. 2015) (reviewing court must determine "whether or not there is **substantial evidence** in the record supporting the decision to issue a warrant") (emphasis added).

The majority concludes that the instant case is analogous to ***Clark***, stating:

> As in ***Clark***, a reliable CI informed the affiant that he purchased controlled substances from a black male, later identified as James

---

[1] The affidavit does not provide a factual basis establishing that the CI had any past transactional relationship with Waugh by stating that the CI witnessed Waugh in possession of drugs, personally purchased drugs from Waugh, or recently had been inside Worrell's Allentown home and observed drugs stored there. ***See Commonwealth v. Wallace***, 42 A.3d 1040, 1050 (Pa. 2012). Rather, the affidavit avers that "Detective Huff began speaking with a [CI] about a black man in his fifties, who distributes heroin and prescription medications out of [a Bethlehem, PA address]." Affidavit of Probable Cause, 10/16/19, at ¶ 4. While the affidavit also states that "[t]he [CI] gets in touch with [Waugh] by calling or texting cell phone number (908) (2*4-#5@3)," it does not state that he contacts him at that number to purchase drugs. ***Id.***

Waugh, and that Waugh stored his drugs at a "stash house" with a female in Allentown. **The information provided by the CI was corroborated.** Police arranged two controlled buys and maintained constant surveillance of the CI and Waugh.[2] On both occasions, Waugh was observed leaving his residence, travelling to 322 N. Jordan St., and then driving directly to the pre-determined site for the controlled buy. On one occasion, the CI provided Waugh money *before* Waugh travelled to 322 N. Jordan St., and Waugh returned with the controlled substance.

Majority Memorandum, ----, at 12 (emphasis in italics in original; emphasis in bold added). Missing from the majority's legal analysis, however, are the following critical factual distinctions between *Clark* and the instant matter that, in my opinion, result in a lack of corroboration of the CI's information. In *Clark*:

- police observed a third party leave his residence and drive to site of pre-arranged buy where he sells cocaine, packaged in two green plastic baggies, to CI who uses pre-recorded buy money;

- police followed the third party back to the residence, watched the third party exit the vehicle, and observe third party directly enter the residence after the buy; and

- police verified the vehicle was registered to the third party who lived at that residence.

*Clark*, 28 A.3d at 1285. By contrast, in the instant matter:

_____

[2] Contrary to the majority's conclusion, neither the affidavit of probable cause nor the testimony from the suppression hearing supports the statement that the police constantly surveilled the CI and Waugh. *See infra* at 3-4. In fact, Detective Ellis testified that he did not see any transactions between the CI and Waugh—resulting in the failure to establish independent police corroboration on the relevant issues.

- police never observed any controlled buys involving Waugh (the third party in this case), let alone observed any suspicious transactions occurring at, around, or inside Worrell's Allentown home;

- police never observed Waugh and the CI conduct any of the controlled buys;

- the only connection the officers made between Waugh and Worrell's Allentown residence is their observation of Waugh entering and exiting the front door of Worrell's Allentown residence before travelling to a predetermined location to meet with the CI; and

- because the officers did not observe either of the controlled buys between Waugh and the CI, they consequently never saw Waugh return to the residence after the controlled buys.

*See* N.T. Suppression Hearing, 7/31/20, at 84 (Commonwealth attorney admitting to court that "other than Mr. Waugh himself going into the Jordan Street residence," no purchases alleged to have been made out of Jordan Street residence); *id.* at 65-67 (Detective Hauser stating he did not personally see any drug transactions made from residence); *id.*, 9/1/20, at 80 (Detective Ellis testifying he did not observe any direct hand-to-hand transaction between CI and Waugh).[3]

_____

[3] Notably, defense counsel noted at the first suppression hearing that now, "at this late stage," the Commonwealth was alleging that there had been controlled buys at the residence prior to the instant surveillance. *Id.*, 7/31/20, at 69. In response, the district attorney acknowledged that Detectives Huff and Ellis would be testifying regarding these controlled buys, as they were "the officers that were involved in the controlled buy or buys from the Jordan Street address." *Id.* However, Detective Huff, who was handling the pre-warrant surveillance of the Jordan Street address, *id.*, 9/1/20, at 50, did not testify at either suppression hearing. Moreover, Detective Ellis, who oversaw a simultaneous multi-jurisdictional investigation in Bethlehem, PA, testified that he never observed any controlled buy with the
*(Footnote Continued Next Page)*

Additionally, the majority's attempt to uphold the search of Worrell's residence, by relying on **Commonwealth v. Kemp**, 195 A.3d 269 (Pa. Super. 2018), is similarly unavailing. In that case, a reliable CI told police that he had purchased drugs from the defendant on numerous occasions over the past couple of years. **Id.** at 272. The officer in that case knew the defendant resided at the place they were surveilling. **Id.** at 273. Within a span of 48 hours the officer twice observed the defendant leave his residence, enter a vehicle, drive to the site of a controlled buy (without making any stops along the route), and witnessed "[t]he exchange between the CI and the [defendant]" **Id.** Thus, **Kemp** contained the critical facts necessary to support the nexus between the place searched and the contraband sought.[4]

By contrast, here, the only information the CI provided connecting Waugh to Worrell's residence was Waugh's alleged statement to the CI that he needed to go to his "stash house in Allentown." Although the detectives saw Waugh enter and exit the Allentown residence twice before the pre-

_____

CI. **Id.** at 80-81. Detective Ellis is also the affiant of the search warrant application.

[4] Moreover, as the majority points out, the affidavit of probable cause in **Kemp** did not state that the sergeant followed the defendant from the site of the controlled buy back to the defendant's residence or that the authorities observed a purchase or exchange inside or in front of the defendant's residence. However, even considering that, it does not change the fact that, in **Kemp**, the officer *did* observe Kemp leave the residence the officers knew was his own, proceed from his residence to the site of a controlled buy, and those same officers observed, first-hand, the defendant conduct two controlled buys with the CI.

arranged buys, those officers never observed either of the controlled buys with the CI or any suspicious activity at the residence—critical facts missing from the majority's suppression analysis and its legal conclusion. **See Galiardi**, **supra** at 796-97 (where CI told officers that third party "lives at 2627 Emily [Street]," police personally observed, on two consecutive days, CI conduct two controlled buys from third party, saw third party exit[5] Emily Street address, walk up to CI, sell CI cocaine, and then walk back into Emily Street address, authorities had substantial evidence in record to support issuing authority's conclusion that there was a "fair probability" that contraband would be found inside Emily Street residence). **See also Kemp**, **supra** ("[p]olice set up a controlled buy and observed Kemp leave his residence, drive directly to the pre-arranged site[,] and conduct the controlled buy"); **Commonwealth v. Davis**, 595 A.2d 1216, 1290 (Pa. Super. 1991) (sufficient facts to support probable cause for search of residence where "informant [] observed [third party] dealing cocaine in the street and then return to the residence afterward;" informant had observed third party "on several occasions in the past selling coc[ai]ne and . . . entering the residence [] after he had made some sales").

Although an informant's reliability and basis of knowledge *may* support probable cause where the informant has provided accurate information of criminal activity in the past, "[t]he affidavit of probable cause must have

_____

established a 'substantial nexus' between the specific location and the criminal activity described." ***Commonwealth v. Mendoza***, 287 A.3d 457, 462 (Pa. Super. 2002) (citation omitted). Where the officers failed to observe Waugh and the CI conduct the controlled buys and did not observe any suspicious activity at the Jordan Street address, there is an insufficient factual basis to support the finding of probable cause to connect suspected illegal drug activity with Worrell's residence. Thus, I would reverse the order denying suppression. Accordingly, I dissent.