2025 PA Super 27

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WALLACE ROSS, | : | |
| | : | |
| Appellant | : | No. 1924 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 4, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009862-2014

BEFORE:   LAZARUS, P.J., NICHOLS, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                                    **FILED JANUARY 30, 2025**

Appellant, Wallace Ross, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after a jury found him guilty of rape and related crimes.  Herein, he raises challenges to the admission of inculpatory statements made to a police officer and to his requirement to register as a sex offender pursuant to Subchapter H of the Sexual Offender Registration and Notification Act ("SORNA").  We affirm.

The trial court sets forth the pertinent facts and procedural history, in relevant part:

> In the early morning hours of August 13, 2014, Appellant entered the bedroom of his fifteen-year-old foster daughter, [hereinafter, "Victim"], and sexually assaulted her.  Appellant's adult daughter, [], caught Appellant exiting Victim's room and immediately alerted Denise Ross, Appellant's wife and Victim's foster mother.  Denise and [her adult daughter] then expelled Appellant from the home

---

[*] Former Justice specially assigned to the Superior Court.

and called the police, who escorted Victim to the Special Victims Unit ("SVU").

After leaving the home, Appellant called his longtime friend and fellow minister, Pastor Thomas Reese, who directed Appellant to meet him at Pastor Reese's church. Pastor Reese then called a mutual friend, Philadelphia Police Officer Yusef Jackson and asked him to join Pastor Reese and Appellant at the church. Appellant, Pastor Reese, and Officer Jackson[, all of whom are pastors at their church,] subsequently had a brief conversation in which Appellant confessed that he had "fondled" Victim. Officer Jackson then drove Appellant to SVU so that he could turn himself in.

Appellant was arrested and charged with Rape, Unlawful Contact with a Minor, Endangering Welfare of Children, Corruption of Minors, Indecent Assault, and Incest.

. . .

On November 23, 2015, Laurie Jubelirer, Esquire, entered her appearance as Appellant's counsel. Appellant's matter was reassigned to the Honorable Roger F. Gordon on November 4, 2016. On December 29, 2016, Appellant filed through counsel an omnibus pretrial motion seeking to suppress the statements that Appellant gave to Pastor Reese and Officer Jackson on the basis that they were obtained in violation of Appellant's constitutional rights after Appellant was not adequately informed of his rights under ***Miranda v. Arizona***, 384 U.S. 436 (1966).

On April 25, 2017, Appellant filed through counsel a supplemental omnibus pretrial motion, renewing his ***Miranda*** claim and additionally moving to suppress his statements to Pastor Reese as confidential communications to a clergyman . . . .[1] [2]

_____

[1] Omitted from the trial court's chronological statement of procedural history, and relevant to the present appeal, is Judge Gordon's August 1, 2017, status listing on the docket stating, "Necessary witness on motion to suppress statement not present today. Motion to suppress statement remains outstanding." ***See*** Docket Entries ##121-126, dated from 8/1/2017 to 8/28/2017.

*(Footnote Continued Next Page)*

On December 6, 2017, Judge Gordon permitted Appellant to proceed *pro se* with Ms. Jubilerer serving as backup counsel in the event that Appellant could not retain private counsel.

. . .

On April 19, 2018, Judge Campbell ordered that Ms. Jubelirer be attached as Appellant's counsel for his forthcoming jury trial. On April 26, 2018, Judge Campbell granted the Commonwealth's motion to revoke Appellant's bail.

On May 10, 2018, Judge Campbell ordered that Ms. Jubelirer be removed as Appellant's counsel and appointed Jason Kadish, [3] Esquire, to represent Appellant. Over the next two (2) years, Appellant's matter was continued several times and reassigned to several different Court of Common Pleas judges. . . . On September 21, 2020, Mr. Kadish filed a motion *in limine* on Appellant's behalf seeking to preclude [as privileged confessional communications to clergy] the statements Pastor Reese made to Officer Jackson regarding Appellant's assault of D.R. and the statements Appellant himself provided to Officer Jackson at the direction of Pastor Reese.

Appellant's matter was reassigned to [the Honorable Charles A. Ehrlich] on September 23, 2020. On September 30, 2020, [Judge Ehrlich] held a motions hearing . . . [and, on] October 5, 2020, [] granted Appellant's [counseled] motion [*in limine*] in part and denied it in part, finding that the communications between Appellant and Pastor Reese prior to Officer Jackson's arrival were privileged and inadmissible at Appellant's trial. [Judge Ehrlich] ruled, however that the statements made after Officer Jackson's arrival would be admissible, finding that the [clerical] privilege no longer existed at that point. N.T., 10/5/2020, at 3-7.

---

[2] The record reflects that on May 2, 2017, Judge Gordon denied Appellant's *pro se* omnibus motions except for a request for discovery of high school records. **See** Docket Entries ##112-114.

[3] Attorney Kadish was the fourth court-appointed counsel to represent Appellant. This Court notes with disapproval the number of counsel who have been appointed in the present matter.

Appellant's jury trial commenced before [the trial court, Judge Ehrlich presiding] on October 7, 2020, after a jury was selected on October 6, 2020.  On October 9, 2020, after hearing all evidence, closing arguments from counsel, and jury instructions from [the trial court], a jury deliberated and found Appellant guilty of Rape, Unlawful Contact with a Minor, Endangering Welfare of Children, Corruption of Minors, Indecent Assault, and Incest.  [The trial court] ordered a presentence investigation report and a mental health evaluation for Appellant and deferred sentencing to a later date.  N.T., 10/9/2020, at 111-116.

[At Appellant's sentencing hearing, after considering the presentence investigation report, the mental health evaluation, Appellant's prior record score, and the facts and circumstances of his case, the trial court sentenced Appellant to an aggregate term of twenty-seven-and-a half (27 ½) to fifty-five (55) years of confinement, with credit for time served.  The Commonwealth had also requested that the conditions of lifetime registration, sex offender treatment, and sex offender supervision apply, and Appellant was advised] of the registration and reporting requirements he was subject to under Megan's Law due to his Rape conviction.  N.T., 6/4/2021, at 6-43.

On June 8, 2021, [Appellant filed a timely counseled post-sentence motion challenging the weight of the evidence with respect to his Rape conviction and contending his sentence was unduly excessive.]  Appellant's post-sentence motion should have been denied by operation of law on October 9, 2021, the 120th day after it was filed.  Due to a breakdown related to limited operations during the COVID-19 pandemic, the denial of Appellant's post-sentence motion was not docketed until July 10, 2023.  Appellant filed a timely notice of appeal to the Superior Court of Pennsylvania on July 11, 2023.

[Appellant's Pa.R.A.P. 1925(b) statement of matters complained of on appeal alleged, *inter alia*: that the trial court erred in denying Appellant's motion to apply the clergy privilege to preclude Officer Jackson's testimony recounting the inculpatory statements Appellant related to him during their conversations in the church and during the car ride to the police station; that the suppression court erred in denying Appellant's 2015 motion to suppress Appellant's statements as obtained in violation of his ***Miranda*** rights; and that his lifetime registration under Revised Subchapter H of SORNA constitutes an illegal sentence.]

- 4 -

Trial Court Opinion, 1-11 (footnotes added).

In Appellant's brief, he raises the following issues for this Court's consideration:

1. Did the Suppression court err when it denied Appellant's pre-trial motion seeking suppression of inculpatory statements made to a police officer where those statements were made while Appellant was subject to a custodial detention and police failed to advise Appellant of his **Miranda** rights resulting in a confession that was not knowing, intelligent and voluntary?

2. Did the trial court err and/or abuse its discretion when it admitted testimony regarding inculpatory statements made by Appellant in violation of the clergy/clerical privilege where those statements were made to an off-duty police officer who was conversing with Appellant "as another member of the clergy" and where Appellant did not consent to disclosure of the statements?

3. Should SORNA lifetime registration requirement imposed as part of the sentence in the matter sub judice be vacated because the SORNA statute is facially unconstitutional?

Brief of Appellant, at 7-8.

In Appellant's first issue on appeal, he challenges the purported denial of the **Miranda** claim he raised in his 2017 counseled motion to suppress.[4]

_____

[4] Appellant also asserts that the trial court violated Pa.R.Crim.P. 581(I) when it failed to issue an opinion setting forth findings of fact and conclusions of law supporting a decision to deny Appellant's **Miranda** claim. **See** Appellant's Brief at 25-26. As discussed *infra*, the record belies this basis of this assertion, as the trial court never denied the **Miranda** claim raised in Attorney Jubelirer's 2017 Supplemental omnibus pretrial motion to suppress, and subsequent counsel, Attorney Jason Kadish, indicated during the October 2, 2020, suppression hearing that he was not seeking suppression of Appellant's statements based on a **Miranda** challenge. Therefore, we discern no merit to Appellant's Rule 581(I)-based argument.

- 5 -

Our standard of review for an order denying a motion to suppress is well-established.

> [We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa. Super. 2019), *quoting Commonwealth v. Kemp*, 195 A.3d 269, 275 (Pa. Super. 2018).

As noted in the above summary of procedural history, the trial court entered a May 2, 2017, order denying generally Appellant's *pro se* omnibus motion to suppress, except for a request for discovery of his daughter's high school records pertaining to unrelated allegations of sexual assault she had made. The trial court did not, however, enter an order denying the April 25, 2017, counseled "Supplemental Omnibus Pretrial Motion" filed by Attorney Jubelirer seeking suppression of, *inter alia*, Appellant's statements given to Officer Jackson without having first received *Miranda* warnings. *See* Supplemental Omnibus Pretrial Motion, 4/25/2017, at 2-3. Rather, the trial court observed in multiple docket entries beginning on August 1, 2017, that

because a necessary witness was not available the motion to suppress Appellant's statement "remains outstanding." **See** fn. 1, *supra*.

An opportunity to advance the unresolved, "outstanding" **Miranda** challenge presented itself several years later at the October 2, 2020, hearing on the counseled motion *in limine* to bar the same statements under the clergy privilege. During argument, Judge Ehrlich asked Attorney Kadish to expound also on the interaction and communications between Appellant and Officer Jackson. Counsel indicated, however, that he was not pursuing a **Miranda** claim as a basis for suppression of Appellant's statements because he viewed Appellant's interaction with Officer Jackson as voluntary. **See** N.T., 10/2/2020, at 48-49.[5]

_____

[5] During oral argument on Appellant's counseled pretrial motion to suppress Appellant's statements under the clergy privilege, counsel for Appellant advanced the argument that Pastor Reese divulged to Officer Jackson privileged communications by Appellant made to Pastor Reese during a spiritual consultation. Specifically, when Officer Jackson arrived at the church he sat down and, wanting to know why he had been called by the two men at 1:30 am, asked, "What happened?" Pastor Reese replied, "I think he fondled his foster daughter." From there, Appellant offered inculpatory statements in his explanation of events that occurred earlier that evening during his interaction with D.R. According to defense counsel, Appellant's statements were inadmissible "fruit of the poisonous tree" that would not have been shared if not for Pastor Reese's improper divulgence of privileged confessional communications.

Near the completion of argument on this distinct evidentiary challenge, however, the trial court asked defense counsel if there is a separate challenge focused, instead, on Appellant's statements made to Officer Jackson directly. Defense Counsel replied that he elected against raising a **Miranda** challenge in this regard based on his determination that Appellant interacted voluntarily with his colleague Officer Jackson:
*(Footnote Continued Next Page)*

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "[A]ppellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered

_____

| **The Court:** | Okay. But what about Officer Jackson who hears certain things directly? |
| --- | --- |
| | I understand what your argument is about, Pastor Thomas Reese, Mr. Reese, or whatever we're calling him. But what about Officer Jackson? |
| **Counsel:** | Well, er to, it's that with Officer Jackson, like I said, it breaks into two things. What's said when he [Appellant] is in the car with Officer Jackson, look, he's there voluntarily. I didn't make any motion under ***Miranda*** or anything else like that because it's clearly not that type of situations. It's a rather unique factual situation and I don't believe that argument fits. |
| | I think when all three of them are together at the church – you know, I think it's also interesting and clear that Officer Jackson, their relationship, they know each other, too. And Officer Jackson obviously was involved in the spiritual radio show, which led to all of the parties being familiar with one another. But, you know, if anything, I don't really have much of an argument when they're in the car driving over to Special Victim's Unit then because Pastor Reese isn't there. They're clearly on their way and he's voluntarily driving over to turn himself in. |

N.T., 10/2/2020, at 48-49.

on appeal." ***Commonwealth v. Howard***, 326 A.3d 474, 2024 WL 4003307 (non-precedential decision) (Pa. Super. filed August 30, 204) (quoting ***Commonwealth v. Little***, 903 A.2d 1269, 1272–73 (Pa. Super. 2006)).

The suppression hearing transcript shows counsel for Appellant did not simply pass on the suppression court's invitation to address Appellant's communications with Officer Jackson, he conceded that no ***Miranda*** violation occurred because Appellant entered the communications voluntarily. Accordingly, under governing standards of review, we find Appellant has waived the claim underpinning his first issue.[6]

In Appellant's second issue, he asserts that the trial court erred when it ruled against applying the clergy-communicant privilege to testimony by Officer Jackson relating certain inculpatory statements Appellant made in his and Pastor Reese's presence while the three men discussed Appellant's admission of having committed sexual assault and what his next actions should entail. Pennsylvania recognizes a clergy-communicant privilege pursuant to 42 Pa.C.S.A. § 5943, which provides:

> No clergyman, priest, rabbi or minister of the gospel of any regularly established church or religious organization, except clergymen or ministers, who are self-ordained or who are members of religious organizations in which members other than

---

[6] We observe, further, Appellant's acknowledgment that, "[t]o the extent that some lapse of trial counsel deprived appellant of his right to effective assistance at the suppression stage of this case, such claims are not presented herein as they were not preserved, and are more properly raised in the context of a claim under the PCRA. Such claims are best left to collateral review and preserved for future resolution. ***See Commonwealth v. Holmes***, 79 A.3d 562, 563-64 (Pa. 2013)."

the leader thereof are deemed clergymen or ministers, who while in the course of his duties has acquired information from any person secretly and in confidence shall be compelled, or allowed without consent of such person, to disclose that information in any legal proceeding, trial or investigation before any government unit.

42 Pa.C.S.A. § 5943. "Pennsylvania courts have interpreted our clergy-communicant privilege as applying only to confidential communications between a communicant and a member of the clergy in [the] role as confessor or spiritual counselor." *Commonwealth v. Stewart*, 547 Pa. 277, 283, 690 A.2d 195, 197-98 (1997) (internal emphasis omitted).

In Appellant's brief, he argues for the preclusion of statements he made to Pastor Reese and Officer Jackson during their 30-minute conversation at their church. Specifically, Appellant argues that Officer Jackson's own testimony at trial in which he maintained he responded to Pastor Reese's request for assistance "as another member of clergy who got a phone call from a pastor who was asking for help[,]" supports the legal conclusion that inculpatory statements conveyed to him were privileged. We disagree.

Viewing Officer Jackson's statement within the context of the evidentiary record generally and his testimony specifically supports the trial court's conclusion that while Officer Jackson's sense of obligation to answer Pastor Reese's early morning call for assistance may have stemmed from the officer's own religious vocation as well as from his affiliation with the pastor's and Appellant's church and church radio show, his role once there was not as Appellant's confidential spiritual advisor but as a trusted officer of the law who would bring Appellant to the SVU properly. Indeed, Officer Jackson testified

that Appellant explained at the church that he agreed to call the officer for the specific purpose of having the officer transport him to the SVU properly and to make things easy for him. N.T., 9/30/2020, at 113. Pastor Reese corroborated this testimony, as he, too, testified that Appellant wanted Officer Jackson's assistance for this reason. N.T., 10/2/2020, at 56.[7]

Based on this record, the trial court ruled that the initial consultation between only Appellant and Pastor Reese, the head of Appellant's church, qualified for the privilege because Appellant clearly sought confidential, spiritual guidance in that meeting. The privilege did not apply to the subsequent 30-minute conversation that included Officer Jackson, the trial court determined, as Appellant had agreed to include the officer in discussions not for spiritual or penitential reasons but for the practical purpose of involving a trusted police officer who would bring him properly and safely to the SVU. As we agree with the trial court's assessment, we find Appellant's second issue affords him no relief.

In his final issue, Appellant challenges the legality of the sentence imposed upon him based on the imposition of a lifetime sex offender

_____

[7] Appellant attempts to ascribe a clerical role to Officer Jackson by noting how Pastor Reese directed him to tell the officer what happened upon the officer's arrival. *See* Brief of Appellant, at 42. The record shows, however, that Pastor Reese advised this as part of his call to Appellant to "man up" and take responsibility, and only after Appellant had said in the officer's presence that he "was tired of running from this" and was "not running from these sexual demons." N.T., 9/30/20, at 112. As did the trial court, we view such statements as pronouncements of Appellant's willingness to turn himself in to Officer Jackson in his role as police officer rather than a confession made for the purpose of receiving spiritual guidance.

registration requirement pursuant to Revised Subchapter H of SORNA, which Appellant contends is facially unconstitutional because it constitutes punishment and is based on an irrebuttable presumption that all sex offenders are high-risk dangerous recidivists. *See* Brief for Appellant, at 44-59. This argument was addressed and rejected by the Pennsylvania Supreme Court in *Commonwealth v. Torsilieri*, 316 A.3d 77 (Pa. 2024).

Appellant's claim presents a pure question of law; therefore, our standard of review is *de novo*, and our scope of review is plenary. *See Torsilieri*, 316 A.3d at 86. We further note

> legislation carries with it a strong presumption of constitutionality, which will not be overcome unless the legislation is clearly, palpably and plainly in violation of the Constitution. Indeed, a party challenging legislation as unconstitutional bears a heavy burden, and all doubts are to be concluded in favor of a finding of constitutionality.

*Id.* (quotation marks and citation omitted).

Appellant filed his brief prior to our Supreme Court's May 31, 2024, decision in *Torsilieri*, in which our Supreme Court determined that Subchapter H of SORNA is not punitive and that its irrebuttable presumption is constitutional. *See Torsilieri*, 316 A.3d at 99-100, 109-10. As Appellant's claims are predicated upon his argument that Subchapter H of SORNA is punitive, *Torsilieri* is dispositive. Therefore, Appellant may obtain no relief on this claim.

Judgment of sentence is affirmed.

- 12 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 1/30/2025